**UNITED STATES of America, Appellee,**

**v.**

**Merrill Dean ESKRIDGE and Harold Earl Spencer, Appellants.**

**Nos. 71–2403, 71–2404.**

United States Court of Appeals, Ninth Circuit.

March 17, 1972.

Rehearing Denied in No. 71–2403 April 17, 1972.

Thomas G. Bruce (argued), Tacoma, Wash., for appellant Eskridge.

Charles L. Senn (argued) of Senn & Treadwell, Seattle, Wash., for appellant Spencer.

John S. Obenour, Asst. U. S. Atty. (argued), Stan Pitkin, U. S. Atty., Tacoma, Wash., for appellee.

Before MERRILL, KOELSCH and KILKENNY, Circuit Judges.

KILKENNY, Circuit Judge:

Appellants were indicted, tried by a jury and convicted of the crime of armed bank robbery in violation of 18 U.S. C. § 2113(a) and (d). From the judgments of conviction and sentences of fifteen years each, they appeal. We affirm.

## BACKGROUND

About 4:00 P.M. on August 21, 1970, a person armed with a gun similar to an Army .45 automatic entered the North Pacific Bank in Tacoma, Washington and took from the manager and two tellers $8,759.00, which he placed in a brown paper bag. He was followed and seen by two witnesses to enter a car parked on the other side of an adjacent building. One witness testified that two men were waiting in the car and that one of them drove the get-away car, while another witness testified that the robber drove the car away and that there was only one waiting occupant. Shortly, thereafter, Giles Braswell, who later testified for the government, was identified as the bank robber.

An informant connected appellant Eskridge with the robbery. While in custody as an army deserter and a state parole violator, Eskridge admitted that he knew Braswell, but only as "Brother Giles", and that he knew Braswell robbed a bank because he saw him enter the bank and later come out with the brown paper bag. Eskridge also correctly identified the get-away car and its method of destruction, but declined to identify the third person who was in the automobile.

Braswell testified in detail as to his meeting with appellants in Yakima, at which time they discussed a bank robbery and appellant Spencer produced an automatic pistol to be used by Braswell. He testified that he and appellants Eskridge and Spencer left Yakima on the 21st of August for the purpose of robbing the bank. They left in an automobile which was purchased by Braswell under another name. Braswell drove to Tacoma. The three had a pre-arrange-

ment under which Braswell was to rob the bank, but there was some talk of appellant Eskridge going in with him. It was finally decided that Braswell had better go himself in that he had previously robbed banks and had some experience. It was agreed that one of appellants would be at the wheel of the automobile and drive after Braswell returned with the money. The agreement included the robbery of the named bank.

After driving around Tacoma for some time, Braswell parked the automobile at the place where it was seen after the robbery. He made several trips to the bank to look around the lobby. When everyone had left but the manager and two tellers, he proceeded with the robbery. The car remained parked from 30 to 40 minutes, during which time appellants were sitting in the car with the motor running. Appellant Eskridge was at the wheel with Spencer sitting on the right hand side. Braswell described in detail what went on during the course of the robbery and after he put the money in the brown paper bag, he walked to the car and told Eskridge to get over because "I'm driving." They drove to the home of one of Braswell's friends where Spencer Eskridge and a third person counted the money. Braswell gave $750.00 to appellant Eskridge, $750.00 to Spencer, and put the rest of the money in a sock. He also testified to additional details as to what occurred after the robbery and before his arrest. Appellants took the witness stand and denied that they knew anything about the robbery until after it occurred.

## CONTENTIONS

Two contentions are common to both appellants: (1) did the court employ an erroneous procedure in ruling on the application for subpoenas under Rule 17(b), F.R.Crim.P., and (2) did the court err in permitting the jury to separate after the case had been submitted?

■ (1) Here, appellants rely on the 1966 amendment to Rule 17(b), F.R. Crim.P., permitting an ex parte application for a subpoena. They contend that the procedure followed by the trial judge in ordering the FBI to secure statements from the witnesses, in advance of the issuance of the subpoenas, resulted in a "windfall" discovery for the prosecution. While the practice employed by the trial court might seem to be questionable, we do not believe that this is a proper case in which to pass on the issue. On the record before us, neither of appellants has shown that his substantial rights have been affected or that he has been prejudiced by the procedure followed by the trial judge.

All of the witnesses for whom appellants sought Rule 17(b) subpoenas were subpoenaed. Appellants called all of these witnesses with the exception of Marie Dearinger, who was called by the government. Previous to the application for the issuance of the subpoenas, the government was acquainted, in general, with what Mrs. Dearinger might reveal in her testimony. It seems rather clear that the government would have called this witness, even though appellants had not requested her presence. Only by arguing that Mrs. Dearinger, the only witness of the group called by the government, would not have testified to the truth, can appellants show prejudice. Needless to say, appellants had no right to conceal the truth. *Cf.* Harris v. New York, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Walder v. United States, 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The fact that the witnesses called by appellants were subject to cross-examination on the statements obtained by the FBI does not demonstrate that appellants' substantial rights have been affected, or that they have been prejudiced. In these circumstances, we hold that appellants have shown no prejudice and that we are governed by Rule 52(a), F.R.Crim.P. The error, if any, was harmless.

■ Aside from the above, neither of the appellants objected to the procedure followed by the trial judge. We should invoke the "plain error" provisions of Rule 52(b), F.R.Crim.P., in only exceptional situations wherein it appears nec-

essary in order to prevent a miscarriage of justice, or to preserve the integrity and reputation of the judicial process. Marshall v. United States, 409 F.2d 925, 927 (9th Cir. 1969). This is not such a case. Here, there was no exclusion of evidence material to the defense, such as was excluded in Welsh v. United States, 404 F.2d 414 (5th Cir. 1968), and other cases cited by appellants. We have considered Spencer's arguments on this issue, even though he did not move for the issuance of subpoenas.

■ (2) Next, appellants urge that the trial court erred in permitting an overnight separation of the jury after the case had been submitted. The case was submitted to the jury at 4:20 P.M. They deliberated until 11:57 P.M., at which time the court reconvened, admonished the jury not to discuss the case and released them until the following morning. Our review of the record reveals no abuse of discretion. We decline to accept appellants' suggestion that we overrule or, in the alternative, distinguish Sullivan v. United States, 414 F. 2d 714 (9th Cir. 1969). Needless to say, our ruling here does not mean that a jury, in a criminal case, should always be permitted an overnight separation. Circumstances might exist under which it would be an abuse of discretion to permit such a separation. We are not here faced with that type of a record.

## THE ESKRIDGE APPEAL
## SUFFICIENCY OF THE EVIDENCE

■ After verdict, we are required to view the evidence in the light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 62, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Vitello v. United States, 425 F.2d 416, 421 (9th Cir. 1970); Kay v. United States, 421 F.2d 1007 (9th Cir. 1970). When viewed in this light, the evidence clearly establishes that Eskridge was a willing participant in the robbery. The jury rejected appellant's argument that, at most, he was guilty of receiving stolen money. We, too, must reject it.

Cases such as United States v. Barber, 429 F.2d 1394, 1397 (3rd Cir. 1970); Thomas v. United States, 398 F.2d 531 (5th Cir. 1967) and Baker v. United States, 395 F.2d 368 (8th Cir. 1968) are so patently distinguishable that we decline to discuss them.

## AIDING AND ABETTING
## INSTRUCTION

■ Next, Eskridge argues that the court's "aiding and abetting" instruction was couched in abstract terms and prejudicial to him. The court, in substance, instructed the jury that mere presence at the scene of the crime and knowledge that a crime was being committed, in itself, was not sufficient to establish that a defendant aided and abetted in the commission of a crime, unless the jury should further find beyond a reasonable doubt that the defendant was a participant in the activity and not merely a knowing spectator or onlooker. The aiding and abetting instruction, when read in context with the "mere presence" instruction is neither abstract nor prejudicial. The judge's wandering statements in United States v. Garguilo, 310 F.2d 249, 254 (2d Cir. 1962), in no way measure up to the preciseness of the judge's instructions before us. Moreover, appellants failed to object to the instruction. Such failure precludes them from challenging it on appeal. See Rule 30, F.R. Crim.P.

## THE SPENCER APPEAL

■ Spencer first contends that the court's separation of its general instruction on weighing the testimony of witnesses from its instruction on weighing the testimony of the defendant was highly prejudicial. In the same vein, Spencer challenges the court's instruction that the jury could consider his personal interest in the outcome of the case. We have consistently rejected both of these contentions. Louie v. United States, 426 F.2d 1398, 1402 (9th Cir. 1970), cert. denied 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158 (1970); Papadakis v. United States, 208 F.2d 945, 954 (9th

Cir. 1953). The "preferences" of the Eighth Circuit, mentioned in Taylor v. United States, 390 F.2d 278 (8th Cir. 1968) are not here applicable and, in any event, do not control our actions.

Finding no error, we affirm the judgment of the lower court.