988 F.2d 124
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lee LUKSON, Defendant-Appellant.
 No. 92-50139.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1993.
Decided March 9, 1993.
 
 Appeal from the United States District Court for the Central District of California; No. CR-91-0536-CBM-1, Consuelo B. Marshall, District Judge, Presiding.
 C.D.Cal.
 AFFIRMED.
 Before BEEZER, BRUNETTI and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Lee Lukson was convicted of fourteen counts of mail fraud in violation of 18 U.S.C. § 1341 in connection with a scheme to obtain fraudulent loans by misrepresenting the ownership of real property put up as collateral. On appeal, he argues that the prosecutor engaged in misconduct and violated several of his constitutional rights. He also contends the district court erred in giving an aiding-and-abetting instruction to the jury. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.
 
 DISCUSSION
 A. Prosecutorial Misconduct
 1. Cross-Examination
 
 3
 Lukson took the stand in his own defense. He complains that a series of questions the prosecutor asked him on cross-examination violated his rights to due process, confrontation, and effective assistance of counsel. The colloquy went as follows:
 
 
 4
 Q: Mr. Lukson, are you aware that the Government has provided documents to your defense lawyer in this case?
 
 
 5
 A: Yes.
 
 
 6
 Q: Are you aware that those documents include memoranda of interviews between you and postal inspectors?
 
 
 7
 A: Yes.
 
 
 8
 Q: Are you also aware that the Government has turned over telephone toll records relating to various different telephone numbers?
 
 
 9
 A: Yes.
 
 
 10
 Q: And both you and your Counsel have had the opportunity to--
 
 
 11
 Defense Attorney: Objection, your Honor. That is--
 
 
 12
 Q: --to go through those records.
 
 
 13
 Defense Attorney: Objection.
 
 
 14
 Q: Isn't that correct?
 
 
 15
 Court: Excuse me. Wait just a moment.
 
 
 16
 Defense Attorney: Objection. He's starting to invade the attorney/client privilege.
 
 
 17
 Court: He and his counsel have had the opportunity. I would sustain the objection to the way it's phrased. You may ask if he has gone through them.
 
 
 18
 Q: Have you had the opportunity to go through those records and documents?
 
 
 19
 A: Yes.
 
 
 20
 Q: And you've been sitting here throughout this trial for the past, roughly one week, correct?
 
 
 21
 A: Yes.
 
 
 22
 Q: And you have the privilege of knowing what all the witnesses have said before you're testifying here today. Isn't that true?
 
 
 23
 A: Yes.
 
 
 24
 Lukson argues that this line of questioning deprived him of due process because it suggested to the jury that they could use against him his exercise of the right to be present at his trial. He particularly relies upon the last two questions which pointed out that he had been sitting through the trial and as a result gained the advantage of knowing what the witnesses who testified against him would say.
 
 
 25
 We reject this argument. It is obvious that if one can sit in a courtroom and listen to others testify before he testifies he gains the advantage of being able to tailor his testimony to explain the testimony of other witnesses. The questions brought this out. But this is an obvious fact. It is something the jury can consider in weighing credibility of a witness, and would exist whether the questions were asked or not. Asking the questions merely highlighted the obvious. The questioning did not violate Lukson's due process right to be present at his trial.
 
 
 26
 Moreover, Lukson did not object to the questions. Thus, we review for plain error. United States v. Powell, 955 F.2d 1206, 1210 (9th Cir.1992). Under this standard, we will reverse only if it is necessary to " 'prevent a miscarriage of justice, or to preserve the integrity and reputation of the judicial process.' " United States v. Gonzalez-Cervantes, 668 F.2d 1073, 1078 (9th Cir.1981) (quoting United States v. Eskridge, 456 F.2d 1202, 1205 (9th Cir.), cert. denied, 408 U.S. 926, and cert. denied, 409 U.S. 883 (1972)). The questioning did not result in plain error.
 
 
 27
 By his confrontation argument, Lukson seems to rely on the prosecutor's question whether he was aware of interviews between him and the postal inspectors. As best we can discern this argument, it is that the question implied that Lukson had made statements against his interest to the inspectors. The argument apparently is that this permitted the jury to consider evidence against him based upon statements to absent witnesses. The argument lacks merit. The prosecutor's question simply referred to interviews. It did not bring in any prejudicial statement made by Lukson to the inspectors. Nor did it imply any prejudicial statement had been made. It trivializes the Confrontation Clause beyond recognition to suggest that such an innocuous question violated Lukson's right to confront witnesses against him. Moreover, our review again is for plain error because there was no contemporaneous objection in the trial court. We find no plain error.
 
 
 28
 With regard to the questioning concerning the telephone toll records, Lukson's trial counsel objected on the ground that the questioning invaded the attorney-client privilege. This objection was sustained. The prosecutor rephrased the question. No further objection was made. Again, our review is for plain error, and we find none.
 
 
 29
 Finally, Lukson argues that his trial counsel's failure to object, on constitutional grounds, to each and all of the foregoing questions deprived him of effective assistance of counsel in violation of the Sixth Amendment. The questioning, however, did not violate any of Lukson's constitutional rights. Any objection on constitutional grounds would have been frivolous at best. Lukson's ineffective assistance of counsel claim is therefore without merit.
 
 2. Closing Argument
 
 30
 The prosecutor's comments in closing argument regarding the defense's failure to present witnesses to corroborate his story did not constitute misconduct. In United States v. Mares, 940 F.2d 455 (9th Cir.1991), the prosecutor asked the jury to ask themselves why the defense presented no explanation of why the defendant, accused of heroin distribution, was "meeting with a man at a Jack In the Box, where they didn't eat anything." Id. at 461. The prosecutor was clearly asking the jury to infer that the reason must have been illegal from the defense's silence. We held that the question was proper and that it neither violated the defendant's fifth amendment right nor improperly shifted the burden of proof to the defendant. Id. We stated that it was proper for a prosecutor to comment on the defense's failure to "counter or explain the testimony presented or evidence introduced." Id.
 
 
 31
 This case is essentially the same, except that there is no claim of a fifth amendment violation. The prosecutor in this case was pointing out that the defense had not corroborated Lukson's testimony. In both cases the prosecutor was simply pointing to weaknesses in the defense's case. As in Mares, the prosecutor's comment was directed at the defense's failure to prove facts which would support its theory of the case, not at Lukson's failure to take the stand.[1] Also, as in Mares, the prosecutor did not argue that the defense's failure "required a guilty verdict." Id. Finally, as in Mares, the prosecutor merely argued for a reasonable inference, and the judge gave an instruction as to the burden of proof.
 
 B. Jury Instruction
 
 32
 Lukson argues that the district court committed reversible error by giving an instruction on the meaning of "aiding and abetting." He contends he was not indicted for aiding and abetting and that he did not defend against it. He acknowledges that the words "aiding and abetting" were used once in the indictment against him, but argues that because they were used only once and did not form a separate count of the indictment, the aiding-and-abetting instruction should not have been given.
 
 
 33
 When an indictment alleges, among other things, that a defendant aided and abetted the commission of a crime, an instruction on the meaning of the term is appropriate. United States v. Wellington, 754 F.2d 1457, 1464 (9th Cir.), cert. denied, 474 U.S. 1032 (1985).
 
 
 34
 Here, the indictment only uses the words "aiding and abetting" once. It does so, however, in the preface to its list of the 27 counts charged against Lukson. The indictment charges Lukson with "participat[ing] in or aid[ing] and abet[ting]" the 27 counts charged. In short, the words "aiding and abetting" pertain to each of the 27 counts. In these circumstances, Lukson had notice that one of the government's theories was that he aided and abetted the commission of the crimes charged. Moreover, "it is well settled that courts may instruct on aiding and abetting, if the evidence warrants, even [if] this theory was not charged in the indictment." United States v. Batimana, 623 F.2d 1366, 1370 n. 3 (9th Cir.), cert. denied, 449 U.S. 1038 (1980); see also United States v. Roselli, 432 F.2d 879, 895 n. 27 (9th Cir.1970), cert. denied, 401 U.S. 924 (1971).
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Lukson, unlike Mares, took the stand