**Norman KRONICK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19852.**

United States Court of Appeals Ninth Circuit.

March 17, 1965.

David Y. Mar, Honolulu, Hawaii, for appellant.

Wm. H. Orrick, Jr., Asst. Atty. Gen., Lionel Kestenbaum, Donald L. Hardison, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before ORR, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Norman Kronick was convicted of criminal contempt pursuant to Rule 42 (a), Federal Rules of Criminal Procedure, and appeals to this court. The conviction followed Kronick's refusal, on a claim of privilege against self-incrimination, to obey a court order that he answer questions propounded of him as a witness in an action then on trial.

The action in question is entitled United States v. Flynn-Lerner, et al., Civil No. 2109, District of Hawaii. It involves two claims, the first being for liquidated damages under section 209 of the Federal Property and Administrative Services Act of 1949, 63 Stat. 392, 40 U.S.C. § 489 (1958). The second, and alternative claim, brought under section 4 of the Clayton Act, 38 Stat. 371 (1914), 15 U.S.C. § 15 (1958), is for damages resulting from asserted violations of sections 1 and 3 of the Sherman Act, 26 Stat. 209 (1890), as amended, 15 U.S.C. §§ 1, 3 (1958).

Kronick, a former officer of National Metals, Ltd., one of the defendants in the action just described, was subpoenaed by the Government and called as its first witness at the trial. He gave fully responsive answers to a variety of questions.

While being questioned concerning the internal business methods of National Metals, he stated, in answer to a question, that the presence of a carbon copy of a letter in the files of the company did not necessarily indicate that the letter had been sent. This answer was directly contrary to an answer to the same question which Kronick had given in a previously-tried criminal action involving the same parties.

Kronick was confronted with his previous testimony. He stated that he had thought at the time of the criminal trial that he was telling the truth. However,

he continued, a subsequent check of the files now indicated to him that some carbon copies had been retained in the company files although the original of the letter had not been sent.

Kronick was then asked by Government counsel whether Dulien Steel Products had any business relationship with National Metals. He answered that there was no such relationship. This testimony, too, was directly contrary to that given by Kronick at the criminal trial. He was confronted with his previous testimony and asked whether he had told the truth at the criminal trial. Kronick replied, "Yes." This colloquy then occurred:

"Q. You stated [at the criminal trial] that Dulien Steel Products also acted as an export agent for National Metals? A. They did not. Q. So I am asking you whether you told the truth. A. Well, I was answering the questions the way you coached me, the way you told me to answer them. At that time I thought I was telling the truth. Q. Would you please state when I coached you? Please state the time and meeting? A. Yes, you coached me for about three or four days before the trial, and you told me how to answer the questions."

Another Government attorney then took over the examination of Kronick during the course of which the latter reiterated his "coaching" charge. Counsel for the Government then asked for, and obtained, a recess, and a conference out of the presence of the jury occurred in the court room. Government counsel indicated his frustration because of the contradictory answers Kronick had given, and counsel's concern about Kronick's apparent charge of subornation of perjury. Counsel did not ask the court to take any particular action but was apparently seeking guidance from the court as to how to proceed. The court stated, in effect, that it could not properly prevent Kronick from making any answers he chose to make, indicating that his credibility was for the jury to determine.

The conference resumed a short time later in chambers. Counsel for the Government and for all of the defendants were present at this further conference. Kronick, who was only a witness, was not present. Further discussion was had along the same line as that which took place in the court room after a recess had been declared. Raymond M. Carlson, one of the Government attorneys, then made the following statements, which allegedly precipitated the claim of privilege against self-incrimination:

"MR. CARLSON: I think it may be that Mr. Smith and we call the Attorney General's office in Washington on the question of counsel. We have already informed the F.B.I. on what happened, so that matter is under consideration. Now, in order for Mr. Smith, for us—

"MR. ALIOTO [counsel for the Lerner defendants]: You said you informed the F.B.I. so that the matter is under consideration. What matter is that?

"MR. CARLSON: The matter of possible perjury."

Alioto protested emphatically against the making of this statement. He asserted that it was an attempt by the Government in the presence of what Alioto termed counsel for Kronick, namely David Y. Mar and Robert St. Sure, to intimidate the witness, to the prejudice of Alioto's client. Up to this time, however, neither the court nor Government counsel had been advised that Mar or St. Sure were counsel for Kronick, and it was not until later in the day, at another conference in chambers that Mar and St. Sure so advised the court and Government counsel.

Government counsel immediately denied having said or intended to indicate that Kronick had been reported to the Federal Bureau of Investigation for investigation and was being investigated for perjury. Carlson stated that he was mistaken in making the general statement quoted above, to the extent that it implied that Kronick had been reported

for investigation. Carlson explained his mistake by saying that he had assumed too much from overhearing one side of a telephone conversation between Carl L. Steinhouse, one of the Government attorneys, and the United States Attorney in Honolulu. The actual purport of that conversation, Government counsel advised the court, was that Steinhouse had reported to the United States Attorney that Kronick had accused Steinhouse of subornation of perjury in the criminal action.

The district court, while believing the explanation offered by Government counsel, admonished them for what it regarded as an improper remark concerning an investigation for possible perjury. The conference in chambers then recessed until the afternoon, when it was resumed. During this conference the court was advised for the first time that St. Sure and Mar were representing witness Kronick as well as National Metals, Ltd., one of the defendants. These attorneys also told the court that they had advised Kronick of what they stated to be his privilege against self-incrimination. At this and subsequent conferences in chambers and hearings in the court room, extensive argument was had concerning the basis for claiming the privilege against self-incrimination, in the light of the immunity statute, 32 Stat. 904 (1903), 15 U.S.C. § 32 (1958), which, as it appears in the Code, reads:

**"§ 32. Immunity of Witness.**

"No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under sections 1–7 of this title and all Acts amendatory thereof or supplemental thereto, and sections 8–11 of this title: *Provided,* That no person so testifying shall be exempt from prosecution or punishment for perjury committed in so testifying."

Trial of the civil action resumed on the following Monday morning. Kronick went back to the witness stand and was asked by Government counsel whether he had a meeting with anyone other than National Metals prior to certain bids on military scrap metal. Kronick refused to answer the question, stating:

"A. I have been informed by my attorneys that Mr. Carlson and Mr. Steinhouse since the last session have contacted the Federal Bureau of Investigation for an investigation of my testimony for a possible perjury indictment. I, therefore, refuse to testify further on the grounds that this testimony might be used against me in violation of my rights under the Fifth Amendment of the Constitution of the United States of America."

The jury was immediately excused and further argument was had on the privilege question. After a recess during which the court read the authorities cited, court proceedings resumed but without the presence of the jury. The court informed Kronick that the reasons given by him and his counsel for claiming the privilege were insufficient in law. The court told Kronick that he was therefore in contempt and would be subject to punishment should he refuse to testify. The court thereupon ordered Kronick to testify, but the latter declined to answer any such questions. In further explanation of his position Kronick stated, in effect, that he feared the Government counsel would seek reprisals against him concerning the answers he might give. He added that he had been in "tremendous fear" in the last three or four days.

The court told Kronick that under the immunity statute his testimony would immunize him from all prosecution, including perjury at the criminal trial, but not from prosecution for perjury at the pending civil trial. The court again ordered Kronick to answer the question which had been asked. Kronick declined to do so. Proceedings were then adjourned until the next morning, at which time the court found Kronick in contempt

and allowed him until 9:00 a. m. the following day to purge himself.

The next morning, however, the court ordered a further special hearing with Kronick present, for the purpose of receiving evidence and further argument on the contempt matter. At this hearing Kronick testified that he had read the transcript of the conference in chambers at which Carlson had made the statement about an investigation of possible perjury. He testified that he had also read the affidavits of agents of the Federal Bureau of Investigation to the effect that no such investigation had been requested or commenced. Kronick reiterated his refusal to testify.

There was additional testimony, pro and con, concerning the basis for Kronick's asserted fear of Government reprisals if Kronick did not testify in the civil action consistently with his testimony in the criminal action. The court was apparently unimpressed by Kronick's version of the facts and, in any event, believed that he was protected to the full extent to which he was entitled by the immunity statute. Kronick was again given an opportunity to purge himself of contempt, but refused.

The court session was then adjourned and the court prepared and signed a certification and order containing findings of fact relative to the events described above, but in much greater detail. The court expressly certified that it heard and saw the conduct constituting the contempt and that such contempt was committed in the actual presence of the court. The court sentenced Kronick to imprisonment for six months. It postponed further trial of the civil action until the determination of this appeal. The court order also provides that, in the event the order shall be sustained on appeal, Kronick shall be afforded an opportunity to purge himself.

■■ The privilege against self-incrimination guaranteed by the Fifth Amendment extends not only to answers which would, in themselves, support a conviction under a federal criminal statute, but also embraces answers which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. Blau v. United States, 340 U.S. 159, 161, 71 S.Ct. 223, 95 L.Ed. 170. But, as Kronick concedes, this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118. The thrust of Kronick's argument on this appeal is that under the unique circumstances of this case he had reasonable cause to apprehend danger if he answered the questions propounded of him at the trial of the civil action, and that the district court erred in holding to the contrary.

The only danger which Kronick claimed to apprehend was that he would be prosecuted for perjury if he testified in the civil action contrary to his testimony in the prior criminal action.

He has no reasonable cause to apprehend danger because of a possible perjury charge based on assertedly false testimony given in the criminal action if, as the district court held, 15 U.S.C. § 32 afforded him complete immunity from prosecution for any perjury he may have committed at the criminal trial.

The only reason suggested by Kronick why section 32 does not afford him such immunity is that Cameron v. United States, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448, on which the district court relied in announcing such immunity, is distinguishable. This is true, Kronick argues, because that case involves an immunity provision (now repealed) in the Bankruptcy Act which absolutely and expressly prohibited the use of testimony given under that Act.

However this may be, established principles with reference to compulsory-testimony statutes make it clear that by testifying in this civil action he will be immune, under section 32, from prosecution for perjury committed at the criminal trial.

■ The validity of compulsory-testimony statutes requires that the protec-

tion which the immunity feature of such statutes affords be co-extensive with and provide a complete substitution for the privilege it supplants. See Brown v. United States, 359 U.S. 41, 46, 79 S.Ct. 539, 3 L.Ed.2d 609. If Kronick were being investigated by a grand jury, or prosecuted, for perjury in connection with his testimony at the prior criminal trial he could, by invoking the Fifth Amendment, decline to testify. It follows that if section 32 is to provide him with a complete substitute for that privilege in the event he is compelled to testify in this civil action which has a substantial relationship to the prior criminal case, it must immunize him from prosecution for perjury committed at the criminal trial.

■ While Kronick does not contend that the perjury proviso of section 32 precludes immunity from charges of past perjury, the law is in any event settled that it does not. That proviso relates only to present perjury while the witness is on the stand and does not remove past instances of perjury from the immunity protection. See Glickstein v. United States, 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed. 128.

■ Nor does Kronick contend that the immunity provided by section 32 is inapplicable in the pending civil action because only the second of the two claims involved in the suit invoked the antitrust laws, the first, and alternative, claim being brought under the Federal Property and Administrative Services Act of 1949. Such a contention would be without merit. The proof necessary to sustain both claims is substantially identical and Kronick's testimony was not separated as between the two claims. Under these circumstances it must necessarily be assumed that all of his testimony is germane to the antitrust claim and is therefore protected by section 32.

■ We accordingly hold that Kronick has no reasonable cause to apprehend danger from testifying in the civil action because of a possible perjury charge based on assertedly false testimony given in the criminal action.

We will assume for present purposes that, in the light of all the events described above, Kronick has, apart from any subjective state of mind, reasonable cause to fear that if he testifies in the civil action differently than he did in the criminal action, he may be prosecuted for perjury in connection with his new testimony.

In the event of such a prosecution, his immunity under section 32 will, as the Government concedes, preclude the Government from relying upon any contradiction which may appear as between his new testimony and his past testimony. This is true because, since the immunity must be co-extensive with his constitutional privilege against self-incrimination, Kronick may not, unless immunized therefrom, be compelled to give testimony now which, by setting up a conflict with his previous testimony, enables the Government to prove present perjury.

■■ Except for this limited protection, however, section 32 does not immunize Kronick from prosecution for perjury growing out of his new testimony. This is made clear by the proviso to that statute. Nevertheless he may not refuse to answer questions because of the likelihood that if he answers falsely he will be prosecuted for such perjury. The right to refuse to answer provided by the Fifth Amendment relates only to past conduct and is wholly inapplicable to future acts which may or may not be committed and which may or may not constitute law violations. See Glickstein v. United States, 222 U.S. 139, 142, 32 S.Ct. 71; United States v. Orta, 5 Cir., 253 F.2d 312, 314. As the Supreme Court said in Glickstein, 222 U.S. page 142, 32 S.Ct. page 73: " * * * the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury."

All Kronick needs to do to protect himself from a charge of perjury based on his testimony in the pending civil trial is to tell the truth.

The order under review is affirmed. In view of the pendency of the civil action and the lack of merit in this appeal, the certified copy of the judgment of this court shall issue forthwith.