Robert E. **RUTHERFORD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 20377.

United States Court of Appeals
Ninth Circuit.

Aug. 11, 1966.

R. Max Etter, Spokane, Wash., for appellant.

Donald F. Turner, Asst. Atty. Gen., Lionel Kestenbaum, John T. Marshall, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HAMLEY, MERRILL and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

In this proceeding Robert E. Rutherford was adjudged to be in contempt of court, and sentenced to imprisonment, for refusing to testify by way of deposition in a pending civil suit. Rutherford appeals, asserting that he was justified in declining to testify on his claim of privilege under the Fifth Amendment. We affirm.

Rutherford is an employee of Carnation Company of Washington (Carnation), a distributor of milk and milk products. In March, 1962, he was called to testify before a United States grand jury in connection with an investigation of antitrust law violations. He refused to waive immunity and was required to testify.

The grand jury returned an indictment charging Carnation, Inland Empire Dairy Association (Inland), and an official of Inland, with a conspiracy in violation of the Sherman Act in the sale of milk and milk products to Fairchild Air Force Base in Washington. All of the defendants were convicted and fined upon their pleas of *nolo contendere.*

Shortly thereafter, the United States commenced a civil suit against Carnation and Inland in the same district court to recover damages in connection with the same conspiracy. The complaint contains two counts. One of these invokes R.S. §§ 3491 and 3492 (1875), 31 U.S.C. §§ 232 and 233 (1964), commonly known as the False Claims Act. The other count is based on section 4A of the Act of October 15, 1914, as added by the Act of July 7, 1955, 69 Stat. 282, 15 U.S.C. § 15a (1964), a provision of the Clayton Act.

The Government subpoenaed Rutherford for the purpose of taking his pretrial deposition in this civil suit. He appeared at the appointed time and place but refused to answer questions propounded by Government counsel, claiming his Fifth Amendment privilege against self-incrimination. He persisted in such refusal despite the assurance of Government counsel that he had immunity under the antitrust immunity statutes, 32 Stat. 904 (1903), 15 U.S.C. § 32 (1964).

Pursuant to Rule 37(a), Federal Rules of Civil Procedure, the United States then moved for a court order compelling the witness to testify. The district court denied the motion, holding that the im-

munity statute did not apply because one of the claims stated in the complaint was founded on the False Claims Act rather than the antitrust laws.

Thereafter, this court decided Kronick v. United States, 9 Cir., 343 F.2d 436, involving refusal to testify in a civil suit in which recovery of damages was sought under alternative counts, one based on the Clayton Act, and the other on section 209 of the Federal Property and Administrative Services Act of 1949, 63 Stat. 392, 40 U.S.C. § 489 (1964). On the basis of that decision, the Government moved for reconsideration of its motion made under Rule 37(a).

Upon reconsideration, the district court held that the decision in *Kronick* was dispositive and required the court to set aside the previous order. Holding that Rutherford would be afforded complete immunity under 15 U.S.C. § 32, the court ordered Rutherford to answer the questions to be then put to him during the taking of his deposition in open court. When the questions were put to Rutherford, however, he again invoked the Fifth Amendment and refused to answer. The court then ordered the witness to answer the questions propounded by counsel for the Government, and for Inland, stating that he had immunity. Rutherford again declined to answer on the ground that his answers might tend to incriminate him.

In a formal order entered the next day, the district court adjudged Rutherford to be in contempt of court, and committed him to the custody of the Attorney General for imprisonment for a term of ninety days. Execution of the sentence was stayed pending appeal, it being provided that if the contempt order were sustained on appeal, Rutherford would be afforded an opportunity to purge himself within sixty days thereafter.

The immunity granted by section 32 of 15 U.S.C. applies to testimony elicited in any "proceeding, suit, or prosecution" under the antitrust statutes. Rutherford urges that a civil damage action brought by the Government pursuant to section 4A of the Clayton Act (15 U.S.C. § 15a), does not qualify as a "proceeding, suit, or prosecution" within the meaning of the immunity statute, and that his refusal to testify in this case was therefore justified.

This immunity statute was enacted in 1903 as part of an appropriations act; the entire statute is reproduced in the margin.[1] The appropriation provision of the act, by its terms, expired June 30, 1904, and only the immunity provision has been codified in 15 U.S.C. § 32. However, this code provision has not been enacted into positive law which makes it necessary, in construing its terms, to resort to the original enactment. United States v. Welden, 377 U.S. 95, 98–99, n. 4, 84 S.Ct. 1082, 12 L.Ed.2d 152.

The Supreme Court in United States v. Welden, was called upon to consider the

---

1. "That for the *enforcement* of the provisions of the Act entitled 'An Act to regulate commerce,' approved February fourth, eighteen hundred and eighty-seven, and all Acts amendatory thereof or supplemental thereto, and of the Act entitled 'An Act to protect trade and commerce against unlawful restraints and monopolies,' approved July second, eighteen hundred and ninety, and all Acts amendatory thereof or supplemental thereto, and sections seventy-three, seventy-four, seventy-five, and seventy-six of the Act entitled 'An Act to reduce taxation, to provide revenue for the Government, and other purposes' approved August twenty-seventh, eighteen hundred and ninety-four, the sum of five hundred thousand dollars, to be immediately available, is hereby appropriated, out of any money in the Treasury not heretofore appropriated, to be expended under the direction of the Attorney-General in the employment of special counsel and agents of the Department of Justice to conduct proceedings, suits, and prosecutions under said Acts in the courts of the United States: *Provided,* That no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said Act * * *." 32 Stat. 903–904. (Emphasis added.)

applicability of the immunity statute to an investigation conducted by a congressional subcommittee. The Court held that the immunity granted by the statute extends only to judicial proceedings. In arriving at this conclusion, the Court found that the phrase "proceeding, suit, or prosecution" related to the phrase "in the courts of the United States" in the immediately preceding clause of the act.

Rutherford's argument is based on a similar analysis. He reasons that the phrase "proceeding, suit, or prosecution" should be modified by the word "enforcement" found in the act's introductory sentence. Accordingly, only those actions brought to enforce the antitrust laws would be covered. "Enforcement" as defined by Rutherford would relate only to criminal prosecutions, injunction and investigatory proceedings and not to civil damage actions filed by the Government. He refers to the latter actions as "remedial" only.

The Government contends that Rutherford's definition of what constitutes an enforcement action is too narrow, and that all of the actions brought by the Justice Department whether criminal or civil should be characterized as enforcement proceedings. It is urged that the antitrust responsibilities are unitary and cannot be divided between civil and criminal proceedings, or between injunction and damage suits.

■ Rutherford has raised a novel issue: Does the immunity statute apply in a civil damage action instituted by the Government? The defendant in Kronick v. United States, 9 Cir., 343 F.2d 436, was a witness in such a Government damage action. This court held that the immunity statute provided the necessary protection against prosecution, but there was no discussion of the issue presented here and no similar contention was raised in *Kronick*. Although the holding in *Kronick* is not dispositive of the question posed by Rutherford, we are of the opinion that the immunity statute was properly invoked in that case and that it is equally applicable in the instant case.

■ Our holding is based on the conclusion that a civil antitrust damage action constitutes enforcement of the antitrust laws and is a "proceeding," or "suit" within the meaning of 15 U.S.C. § 32.

These Government damage actions were authorized by Congress in 1955, due in part to a recognition of the large amount of procurement done by the Government, particularly during periods of defense mobilization. The Senate report accompanying the bill which ultimately became 15 U.S.C. § 15a, contains language which makes it clear that Congress considered private antitrust actions to be of prime importance in the enforcement of the antitrust laws and the nation's antitrust policies.[2]

The Government by statute has been accorded the status of a private party for purposes of instituting damage actions. If private actions generally are viewed as vehicles for enforcing the nation's antitrust laws, it is difficult to conclude that Government damage actions do not also enforce the antitrust laws. Rutherford points out that the Government can recover only actual damages while private claimants are entitled to treble damage awards; this he asserts distinguishes the Government actions from private enforcement proceedings. The omission of a treble damage provision in the statute authorizing Government suits can be attributed to the opinion of Congress that since the Government has the basic responsibility of enforcing the antitrust laws, no special inducement to sue in the form of treble damage awards is necessary. But this distinction does not mean that the Government's actions do not enforce the antitrust laws.[3]

2. U.S.Code Cong. and Admin.News 1955, pp. 2329–2330.

3. Fines in criminal antitrust cases are limited to $50,000 and it is often subsequent civil actions which make such conduct truly unprofitable and deter future violations. Inland and Carnation were each fined $20,000 in the criminal prosecution; the Government in its damage action is seeking to recover about $296,000 from these companies.

The argument which Rutherford has constructed is based on a too narrow definition of the concept of enforcement of antitrust laws. This concept does not exclude suits for damages brought by the Government and based on antitrust violations. The fact that the Government's action is one for damages does not therefore preclude the operation of the immunity statute.

██ Rutherford also contends that, in any event, the immunity statute is inapplicable in the pending Government suit, due to the joinder of a claim under the False Claims Act.

In Kronick v. United States, 9 Cir., 343 F.2d 436, we had this to say about a similar problem:

"Nor does Kronick contend that the immunity provided by section 32 is inapplicable in the pending civil action because only the second of the two claims involved in the suit invoked the antitrust laws, the first, and alternative, claim being brought under the Federal Property and Administrative Services Act of 1949. Such a contention would be without merit. The proof necessary to sustain both claims is substantially identical and Kronick's testimony was not separated as between the two claims. Under these circumstances it must necessarily be assumed that all of his testimony is germane to the antitrust claim and is therefore protected by section 32." 343 F.2d at 441.

Rutherford does not appear to challenge the soundness of this statement, but rather, concerns himself with differentiating the Kronick case from the instant case. Specifically, it is argued that the proof required to establish violations of the False Claims Act is materially and substantially different from the proof necessary to establish antitrust violations, and that the scope and coverage of the laws differ substantially. In support of this proposition, Rutherford relies primarily on the fact that the False Claims Act requires proof of intent to defraud whereas fraud is not an element of an antitrust violation.

But this apparent distinction is too insubstantial to dictate a conclusion different from the one reached in the Kronick opinion. The non-antitrust statute in Kronick allows recovery for fraud in the disposal of Government property and other transactions; the False Claims Act covers generally the presentation of "false, fictitious or fraudulent" claims to the Government and conspiracies to defraud the United States by such claims. The similarity between the two statutes is significant—they both involve fraud.

The complaint in the Government's case against Inland and Carnation establishes that both counts are based on the same alleged course of conduct. The antitrust count charges an agreement to fix prices and to submit noncompetitive, collusive, rigged bids on the sale of milk and milk products to Fairchild Air Force Base. In the False Claims Act count, the Government alleges that the defendants submitted noncompetitive, collusive and rigged bids, while representing that they were competitive bidders.

The similarity between the two claims is patent, and the proof required to establish them is virtually identical. To afford Rutherford complete protection it will be conclusively presumed, as in Kronick, that the testimony which the Government intends to elicit from Rutherford will be germane to the antitrust claim, thus affording him immunity as to all of this testimony in this cause.[4]

---

4. A trial court determination that, because of the similarity between a non-antitrust claim and a joined antitrust claim, all testimony received in the cause will be conclusively presumed to be germane to the antitrust claim and therefore protected by the immunity statute (15 U.S.C. § 32), is in actuality a ruling in favor of a witness seeking to safeguard his Fifth Amendment privilege against self-incrimination. It is not necessary for such a witness to obtain appellate confirmation of such a ruling, through the expedient of contempt proceedings, for acquiescence in such ruling, and the giving of testimony subject to the immunity thus afforded, is binding upon all federal and

We hold that the inclusion of a claim under the False Claims Act does not, in this case, render the antitrust immunity statute inapplicable.

■ Rutherford raises an additional argument to the effect that his refusal to answer the Government's questions was justified because of the possibility that his answers would involve him in crimes committed subsequent to his grand jury testimony. He states that the immunity granted by 15 U.S.C. § 32 extends only to those crimes disclosed by him before the grand jury, which were committed on or before the date of his testimony before the grand jury.

This argument involves a *non sequitur*. Our concern is with the immunity granted by 15 U.S.C. § 32 in the civil damage action and not with the immunity granted Rutherford in the grand jury proceedings. Section 32 of 15 U.S.C., as applied in this case, will protect Rutherford against prosecution for crimes based on his testimony in the civil damage suit, other than perjury committed in such suit. This immunity covers any past crimes including those subsequent to the grand jury proceeding which may be disclosed by his testimony. Rutherford's fears that 15 U.S.C. § 32 provides inadequate protection against prosecution for possible past crimes are unfounded, and his argument based on these fears is without merit.

■ Finally, Rutherford urges that this court should rule that the immunity statute involved in this case is contrary to the Fifth Amendment and therefore unconstitutional. In view of the Supreme Court's position regarding the constitutionality of immunity statutes generally (Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511) we think that such a ruling is unwarranted. Nor do we perceive, as Rutherford does, the indication of a new doctrinal trend in matters concerning the Fifth Amendment which would undermine the validity of *Ullmann*.

Affirmed.

state prosecuting officials. See Murphy v. Waterfront Commission of New York

Harbor, 378 U.S. 52, 53, note 1, 77–79, 84 S.Ct. 1594, 12 L.Ed.2d 678.