UNITED STATES of America,
Plaintiff-Appellee,

v.

DUNHAM CONCRETE PRODUCTS,
INC. et al., Defendants-Appellants.

No. 71–2791.

United States Court of Appeals,
Fifth Circuit.

March 23, 1973.

Rehearing and Rehearing En Banc
Denied May 23, 1973.

James A. McPherson, New Orleans, La., Ossie B. Brown, Baton Rouge, La., for defendants-appellants.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Howard E. Shapiro, Stephen Rubin, Harry First, Carl D. Lawson, Wilford L. Whitley, Jr., Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before RIVES, WISDOM and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This case involves a federal statute, now repealed, that is asserted to immunize a defendant from criminal prosecution under the antitrust laws for transactions about which he had testified in a private antitrust case, at a time when the statute was effective. We hold that a proper reading of the statute fails to immunize the defendant, that there is no merit to the claims of error in the grand jury proceedings that produced the indictment, and that the trial proceedings contain no reversible error. We affirm the convictions.

A jury convicted three corporate defendants and their part-owner and manager Ted F. Dunham, Jr. of (1) attempting to monopolize trade in concrete products, in violation of Section 2 of the Sherman Act, 15 U.S.C.A. § 2, and (2) conspiring to affect commerce by attempting to obtain property through physical violence, in violation of the Hobbs Act, 18 U.S.C.A. § 1951. On the Sherman Act count, Louisiana Ready-Mix Company and Dunham Concrete Products, Inc. were each fined $30,000, Anderson-Dunham, Inc. was fined $40,000, and Ted Dunham was fined $30,000 and was sentenced to six months in prison. On the Hobbs Act count, Louisiana Ready-Mix and Dunham Concrete were fined $5,000 each, Anderson-Dunham was fined $10,000, and Ted Dunham was fined $10,000 and

was sentenced to three years in prison, with two and one-half years suspended. Dunham's prison sentences are to run consecutively.

Although all defendants filed a notice of appeal, only Anderson-Dunham, Inc. and Ted Dunham, Jr. have prosecuted their appeals. The appeals of the other two corporate defendants, Louisiana Ready-Mix Company and Dunham Concrete Products, are therefore dismissed. Rule 12(c), F.R.A.P.

## I. Immunity

In 1967 Dunham, certain Dunham corporations, and a labor representative were sued in a private antitrust action that sought treble damages for an alleged conspiracy to restrain trade in the Baton Rouge, Louisiana, concrete products market. Dunham was deposed three times by the private plaintiff during the preliminary stages of the civil litigation. The testimony elicited from him in the first two depositions covered matters that later constituted the substance of the Sherman Act violations, and the third deposition dealt with Dunham's knowledge of the alleged Hobbs Act violation. We assume that Dunham's deposition testimony would qualify him for immunity if the immunity statute is applicable. The corporate defendant Anderson-Dunham, Inc., does not claim immunity because the statute specifically applies only to natural persons and, moreover, a corporation has no Fifth Amendment privilege through which immunity may be asserted. George Campbell Painting Corp. v. Reid, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968).

■ The question is whether a person, who testifies in a private civil antitrust suit in which the Government has no involvement, is entitled to immunity from criminal prosecution under 15 U. S.C.A. § 32. The Government contends that, because only the Government can grant immunity, the statute does not apply to nongovernment litigation.

Dunham contends that he is entitled to immunity (1) under the wording of the statute, (2) because permitting immunity here would further the legislative purpose of Section 32, and (3) because prior case law tends to support his view of the scope of the statute.

Enacted as part of the general appropriations act of February 25, 1903, Section 32 provides that

"No person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit or prosecution under sections 1 through 7 of this title and all Acts amendatory thereof or supplemental thereto, and sections 8 to 11 of this title . . . ."

Act of February 25, 1903, c. 755, § 1, 32 Stat. 904.

■ We note that this decision will be one of limited effect. Sections 32 and 33, which grant a broad transactional immunity, have now been repealed by Public Law 91–452, Title II, §§ 209, 210, 84 Stat. 929 (October 15, 1970). The current immunity statute, 18 U.S.C.A. § 6002, permits only a narrowed use immunity, and Section 6003(a) explicitly states that immunity is to be conferred by the District Court "upon the request of the United States attorney." Under the current statute, then, only the Government can confer immunity. Hence, our decision here will affect only appellant Dunham and such other antitrust criminal prosecutions, if any, in which the defendants testified in private litigation prior to October 15, 1970, the effective date of repeal for Sections 32 and 33.

The District Court held that Dunham was not immune under Section 32 from prosecution. This holding was correct. To hold otherwise would be contrary to the wording of the statute, its legislative history, and its purpose.

1. Section 32 was enacted as part of the general appropriations act of February 25, 1903, that declared in part:

"That for the enforcement of the provisions of the [Interstate Commerce] Act . . . the [Sherman] Act . . . and . . . [the antitrust provisions of the Wilson Tariff] Act, . . . the sum of five hundred thousand dollars . . . is hereby appropriated . . . to be expended under the direction of the Attorney-General in the employment of special counsel and agents of the Department of Justice to conduct proceedings, suits, and prosecutions under said Acts in the courts of the United States: *Provided,* That no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said Acts."

32 Stat. 903–904 (1903).[1]

The language of the appropriation portion of the statute indicates that the purpose of the appropriation was to fund judicial enforcement activities by the United States. *See* United States v. Welden, 377 U.S. 95, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964); United States v. Monia, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943). The money was "to be expended under the direction of the Attorney-General in the employment of special counsel and agents of the Department of Justice . . . ." 32 Stat. 904. These Justice Department personnel were "to conduct proceedings, suits, and prosecutions" under the then-current antitrust laws. 32 Stat. 904. In addition, the immunity proviso in question here was appended.

Dunham argues that, if Congress had intended that only the Government be authorized to accord immunity under Section 32, the statute would read *"Government* proceeding, *suit by the United States* or prosecution." We disagree. We think that the "proceedings" to which the statute refers are the same "proceedings" with which the appropriation as a whole is concerned. Thus, since the "proceedings, suits, and prosecutions" referred to in the appropriation section of the bill were those brought by the Justice Department, so also must those terms, when used in the immunity proviso, refer to those "proceedings, suits, and prosecutions" conducted by "special counsel and agents of the Department of Justice."

This reading of the phrase in question has previously been approved by the Supreme Court in another context. In United States v. Welden, *supra,* the defendant in a criminal antitrust prosecution had previously testified under subpoena before a Congressional subcommittee under subpoena about the same matters. Welden moved to dismiss the indictment on the ground of immunity under Section 32, contending that the language in the proviso applying to "any proceeding" encompassed more than the nearly identical language in the previous clause in the statute authorizing court enforcement by the Department of Justice and was broad enough to cover Congressional investigations. The Supreme Court, however, rejected this contention and stated: "By any common-sense reading of this statute, the words 'any proceeding, suit, or prosecution under said Acts' in the proviso plainly refer to the phrase 'proceedings, suits, and prosecutions under said Acts *in the courts* of the United States,' in the previous clause." 377 U.S. at 97, 84 S.Ct. at 1084 (Court's emphasis). Hence, to read Section 32 as Dunham seeks would require us to read the phrase one way in one clause, and to construe it another way in a subsequent clause. This we cannot do. The phrase must be given the same meaning in both clauses.

1. Congress has not enacted Title 15 of the United States Code into positive law, so the Statutes at Large take precedence over the codification. United States v. Welden, 377 U.S. 95, 98, 84 S.Ct. 1082, 12 L.Ed.2d 152 n. 4 (1964).

2. The legislative history of Section 32 indicates very little about its intended scope. The appropriation was viewed by its sponsors as legislation that would strengthen antitrust enforcement by the Attorney-General. 36 Cong.Rec. 411–12 (1902). The immunity section itself was also intended to facilitate antitrust enforcement. Because it had proven "extremely difficult to establish the existence of combinations or conspiracies without the testimony of persons who [were] guilty parties thereto," an immunity provision would have "great utility in aiding in effectively enforcing the antitrust laws." H.R.No.1506, 56th Cong., 1st Sess. 2; 33 Cong.Rec. 6478 (1900).

The legislative history of the 1906 amendment to the immunity statute, 34 Stat. 798, 15 U.S.C.A. § 33, however, confirms our view that Congress intended for Section 32 immunity to be granted solely by Government officials. Section 33 specifically limited immunity under existing immunity statutes to persons testifying under oath and in obedience to a subpoena. The Senate version of Section 33, S. 5769, read substantially like the present statute, but the House version extended immunity only to a person "who, as a witness *on the part of the Government* in any proceeding authorized by any of said statutes, testifies on oath or in obedience to a subpoena produces relevant evidence." 40 Cong.Rec. 8738 (1906) (emphasis added). The floor manager of the bill in the House, Representative Littlefield, stated that "[w]e do not intend that any person shall have the power to offer immunity to a witness *except the Government of the United States* . . . ." 40 Cong.Rec. 8739 (emphasis added). Although Congressman Littlefield preferred the House version, he admitted that both the House and Senate bills expressed the same intent and accomplished precisely the same purpose. Thus, Section 33 was intended to limit immunity, including Section 32 immunity, to those instances where a responsible Government official would offer it.

3. Finally, to hold that Section 32 authorizes a private plaintiff to immunize antitrust violators would be to disregard the legislative purpose of the statute. The underlying purpose of the immunity clause was the same as that of the appropriation: to strengthen antitrust enforcement by the Attorney-General.

Dunham argues that, by permitting private plaintiffs to confer Section 32 immunity, Congress would have been strengthening antitrust enforcement by encouraging and by facilitating private enforcement. Although the courts have historically emphasized the importance of the private antitrust action as a means of achieving the policy goals of the antitrust laws, *see, e. g.,* Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 88 S.Ct. 1981, 20 L. Ed.2d 982 (1968); Byram Concretanks, Inc. v. Warren Concrete Products Co., 374 F.2d 649 (3d Cir. 1967); Rutherford v. United States, 365 F.2d 353 (9th Cir.), cert. denied, 385 U.S. 987, 87 S.Ct. 598, 17 L.Ed.2d 449 (1966); Monarch Life Ins. Co. v. Loyal Protective Life Ins. Co., 326 F.2d 841 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964), private civil actions can only supplement, and not supplant, governmental efforts both civil and criminal. As the Supreme Court stated in holding that a private antitrust decree does not bar a subsequent Government injunction, "it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under these laws." United States v. Borden Co., 347 U.S. 514, 518, 74 S.Ct. 703, 706, 98 L.Ed. 903 (1954). Hence, a construction of Section 32 that would have hindered Government action, civil or criminal, would not be effectuating the legislative intent underlying Section 32.

Dunham's proposed construction of Section 32 might indeed hinder governmental enforcement of the criminal provisions of the antitrust laws. First, the

decision to prosecute or not to prosecute criminal violations of the antitrust laws would become a decision to be made, not by responsible Government officials, but by private antitrust plaintiffs. A zealous antitrust plaintiff could easily immunize an entire industry from criminal prosecution under the antitrust laws.

Second, the possibility of collusive suits must be reckoned with. If Dunham's view of the Congressional intent were correct, co-conspirators could have used each other to confer immunity from criminal prosecution. Dunham discounts this fear contending that the courts could guard against collusive suits by permitting Section 32 immunity to attach only if the defendant had testified or had produced evidence in a bona fide adversary proceeding. The intent of the Act, however, was to ease prosecution, not to complicate it.

Third, under Dunham's view of Section 32, the Government's power to offer immunity in exchange for information would have been extremely limited. Potential defendants would have had an alternate source of immunity, the private plaintiff, and the Government's power to determine which persons should be prosecuted would have been substantially lessened. Yet this tool to expose anticompetitive conspiracies was, according to one of the drafters of the immunity statute, one of the basic needs underlying the enactment of the statute. *See* H.R.No.1506, *supra.*

In view of the legislative history and the clear intent of the statute, we hold that Section 32 authorized immunity from criminal prosecution only to the extent that the Government actively acquiesced.

4. Although we are told that this is the first case to present to an appellate court the question of whether a private plaintiff may confer Section 32 immunity, the available case law almost uniformly supports the Government's position in this case. Welden v. United States, *supra,* held that Section 32 immunity applied only to persons testifying in judicial proceedings and did not apply to persons testifying before committees or subcommittees of Congress. United States v. Monia, *supra,* held that a witness who, under subpoena, testified before a grand jury about an alleged Sherman Act violation obtained immunity from prosecution for that offense, even though he did not claim his Fifth Amendment privilege against self-incrimination. In construing 15 U.S.C.A. § 33, 34 Stat. 798 (1906), the 1906 amendment to Section 32, the Court stated in dictum that the purpose of the amendment was "to protect the Government's interests by preventing immunity unless the prosecuting officer, or other Government official concerned, should compel the witness' attendance by subpoena and have him sworn." 317 U.S. at 429, 63 S.Ct. at 411. *Welden, supra,* restated this view, declaring:

> "United States v. Monia, 317 U.S. 424, 429–430, [63 S.Ct. 409, 412, 87 L.Ed. 376], recognized that 'the sole purpose' of the 1906 statute was to limit immunity to persons 'who, in obedience to a subpoena, testified or produced evidence under oath,' so that the decision whether or not to grant immunity would be that of the appropriate 'Government officials,' rather than of private citizens anticipating indictment."

377 U.S. at 106, 84 S.Ct. at 1089. Thus, both *Welden* and *Monia* indicate that the decision to grant immunity under Sections 32 and 33 was not intended to be left to private citizens.

Several Circuit and District Court cases support this view of Section 32. For example, in a private antitrust suit, H. Wagner & Adler Co. v. Mali, 74 F.2d 666 (2d Cir. 1935), the Second Circuit held that the District Court had erred by requiring defendants to answer interrogatories that were possibly incriminating. In dictum, the Court stated that Section 32 would not cure the impropriety because it could not confer an immu-

nity from criminal prosecution. According to the Court:

> "[s]ince the body of the statute is concerned with proceedings brought by the Department of Justice, it would seem a natural construction to limit similarly the proviso. Moreover, it would be an amazing thing to allow a private suitor to confer immunity upon a defendant or other witness by calling him in a private action."

74 F.2d at 670. *See also* E. H. Rohde Leather Co. v. Duncan & Sons, Inc., 15 F.2d 103 (W.D.Wash.1926).

Dunham relies on two cases, one of which is not on point and the other of which has limited precedential content. The former, Rutherford v. United States, *supra*, held only that Section 32 immunity may be granted to a defendant in a Government suit for monetary damages under the Sherman Act. The Ninth Circuit's holding in *Rutherford* is not inconsistent with our present holding, because there the Government actively participated in the decision to grant immunity. Dunham's other case is an unreported decision of the District Court for the Western District of Washington, Sabado-Ollero, Inc. v. United Dairymen's Ass'n, Civil No. 7144 (W.D. Wash., Aug. 31, 1970), mandamus ref. sub nom. United States v. Sabado-Ollero, Inc., 432 F.2d 1359 (9th Cir., 1970). The District Court there required a defendant to give deposition testimony in a private antitrust suit after being granted Section 32 immunity. The immunized defendant was deposed by the private plaintiff, and the United States applied to the Ninth Circuit for a writ of mandamus to compel the District Court to rescind and vacate its order that granted immunity. In a *per curiam* order, without ruling on the merits, the Ninth Circuit refused the Government's mandamus petition. The witness had already been compelled to testify under the District Circuit order of immunity, so the Ninth Circuit's order could have been based on the unfairness that would have occurred if it had not

protected a defendant-witness who had been compelled to testify under a District Court order granting him immunity. To this extent, it is not persuasive precedent in this case.

## II. Grand Jury

Appellants contend that the indictment should have been dismissed because a Government grand jury witness (1) testified before the grand jury as an expert on the antitrust problems of the concrete building materials industry, when in actuality he was not a qualified expert; (2) improperly summarized for the grand jury the Government's presentation; (3) offered an expert opinion to the grand jury on the precise point to be determined by it; (4) improperly referred to an earlier grand jury proceeding by not relating the earlier testimony in its entirety; (5) gave wholly hearsay testimony, based upon other grand jury witnesses' testimony and upon documents subpoenaed by the grand jury and its predecessor; and (6) was provided copies of grand jury exhibits, without a court order, in violation of Rule 6(e), F.R.Crim.P.

The witness was Ernest Hays, an economist with the Economic Section of the United States Justice Department's Antitrust Division. His specific function before the grand jury was to compare the pay scales and other terms of two Teamsters Union contracts. The contracts themselves (one was with appellant Anderson-Dunham, Inc., the other with a competitor) had already been submitted to the grand jury as exhibits by a previous witness, and Hays' testimony pointed out particular contractual provisions that were more favorable to appellant Anderson-Dunham, Inc. His testimony focused on two subjects: the lower wage scales paid by Anderson-Dunham, Inc. and the absence of an arbitration clause in the Anderson-Dunham labor contract, a clause present in the competitor's contract. Appellants argue that Hays' testimony "improperly influenced" the grand jury's decision to indict.

Upon a careful reading of Hays' grand jury testimony, we conclude that appellants' objections to it are groundless and that the District Court correctly refused to dismiss the indictment.

First, Hays did not testify as an expert; he simply made arithmetical computations and compared the provisions of two labor contracts. At no time was Hays asked his "expert opinion" about anything.

Second, nowhere in Hays' grand jury testimony does he "argumentatively summarize" the Government's presentation. Appellants fail to indicate precisely where this alleged summary may be found, and we must conclude that Hays" testimony was not improper in this respect.

Third, nowhere did Hays offer an expert conclusion on the "precise point" to be determined by the grand jury. His testimony was explanatory and descriptive, and it offered no conclusions based upon expert judgment.

■ Fourth, appellants contend that Hays' testimony was improper because it made an incomplete reference to testimony given before a previous grand jury. Reading the testimony, we can find only one instance where such a reference was made, and that was where Hays pointed out that, although they reached different numerical results, his arithmetic computations merely confirmed to conclusions of the witness who had testified before a previous grand jury. Appellants cite In re Grand Jury Investigation of Banana Industry, 214 F.Supp. 856 (D.Md.1963), for the proposition that the Government, when referring to testimony heard by a previous grand jury, must read the entirety of the testimony to the current grand jury. Unlike the *Banana Industry* case, though, appellants here can point neither to carefully prepared and highly selective summaries nor to any prejudicial effect from the partial reference. In this context, the partial reference to testimony before a previous grand jury did not constitute a ground for dismissing the indictment.

■ Fifth, appellants contend that part of Hays' grand jury testimony was hearsay, is therefore incompetent, and consequently was improper. Assuming that this contention is correct, it nonetheless states no legal basis for dismissing the indictment. Courts are not required to dismiss indictments based solely upon hearsay evidence. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

■ Even if Hays' grand jury testimony was that of an unqualified expert, was an argumentative summary, and was opinionated on the precise point or points to be determined by the grand jury, there would not be sufficient cause for dismissing the indictment.

■ The rule is clear that Government officials may assist the grand jury in analyzing the evidence before it. For example, in United States v. United States District Court, 238 F.2d 713 (4th Cir. 1956), cert. denied sub nom. Valley Bell Dairy Co., Inc. v. United States, 352 U.S. 981, 77 S.Ct. 382, 1 L.Ed.2d 365 (1957), the Fourth Circuit held that the grand jury could return a valid indictment even after hearing a digest of testimony prepared by Government counsel. According to the Court, "[i]n investigations of this sort [antitrust], it is necessary that the grand jury have the aid of counsel, not only in examining witnesses but also in digesting the great mass of evidentiary matter produced before them . . . ." 238 F.2d at 720–721. And in United States v. Rintelen, 235 F. 787, 791 (S.D.N.Y.1916), Judge Augustus Hand observed: "Assuming that a grand jury were simply supplied with the witnesses and nothing more . . . what sort of an investigation would be had, or intelligent consideration secured, in a difficult or complicated matter?"

■■ An indictment, regular on its face and returned by a legally constituted grand jury, is presumed to be founded on competent evidence, United States v. James, 290 F.2d 866 (5th Cir.), cert. denied, 368 U.S. 834, 82 S.Ct. 60, 7 L.Ed.

2d 36 (1961), and the law is well established that the submission to a grand jury of some incompetent proof is not a ground for dismissing the indictment. *See* United States v. Nunan, 236 F.2d 576 (2d Cir. 1956), cert. denied, 353 U. S. 912, 77 S.Ct. 661, 1 L.Ed.2d 665 (1957); *see also* Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (illegally obtained evidence); Coppedge v. United States, 114 U.S. App.D.C. 79, 311 F.2d 128 (1962), cert. denied, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963) (perjured testimony). Hays' testimony here constituted only a small part of the evidence presented to the grand jury, and appellants cannot, and in fact do not, dispute that at least some competent evidence was presented to the grand jury. That is sufficient to sustain the indictment. United States v. Tane, 329 F.2d 848 (2d Cir. 1964); Coppedge v. United States, *supra*.

▬ Finally, as the Sixth point, appellants argue that the indictment should have been dismissed because Hays, without a court order as required by Rule 6(e), F.R.Crim.P., was given access to otherwise secret grand jury exhibits to help prepare his grand jury testimony. Apart from the question of whether appellants have standing to remedy the alleged breach of grand jury secrecy, the remedy in any case would not be to dismiss the indictment. Instead, as courts have recognized, if the Government abuses the grand jury in this way, a contempt citation will be adequate to halt any impropriety and to protect grand jury secrecy. *See, e. g.*, United States v. United States District Court, *supra*, 238 F.2d at 721; In re Petroleum Industry Investigations, 152 F. Supp. 646 (E.D.Va.1957).

## III. New Trial

Appellants contend that multiple trial errors, alone or cumulated, entitle them to a new trial. We disagree.

▬ 1. Appellants argue that the trial court violated their Sixth Amendment Right of Confrontation when it permitted two Government witnesses to testify as to declarations of deceased alleged co-conspirators. Appellants complain that "it is impossible to cross-examine a dead man." Out-of-court statements of a co-conspirator, made in furtherance of the conspiracy and during its pendency, have long been held admissible in the federal courts as a settled exception to the hearsay rule. *See* Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953); United States v. Johnson, 466 F.2d 508 (5th Cir. 1972); United States v. Harvey, 464 F.2d 1286 (5th Cir. 1972); United States v. Williamson, 450 F.2d 585 (5th Cir. 1971), cert. denied, 405 U.S. 1026, 92 S.Ct. 1297, 31 L.Ed.2d 486 (1972); United States v. Fischetti, 450 F.2d 34 (5th Cir. 1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1290, 31 L.Ed.2d 478 (1972); United States v. Nall, 437 F.2d 1177 (5th Cir. 1971); McGregor v. United States, 422 F.2d 925 (5th Cir. 1970); Holsen v. United States, 392 F. 2d 292 (5th Cir. 1968), cert. denied, 393 U.S. 1029, 89 S.Ct. 640, 21 L.Ed.2d 573 (1969); Orser v. United States, 362 F. 2d 580 (5th Cir. 1966); C. McCormick, Law of Evidence § 244 at 521–24 (1954); 4 Wigmore on Evidence § 1079 (3d ed. 1940); *cf* Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The admission into evidence of statements made by a declarant who was dead at the time of trial has also long been permitted. *See, e. g.*, Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892). Accordingly, "[t]he death of a coconspirator will not render inadmissible statements made by him during the pendency of the conspiracy." 2 Wharton, Criminal Evidence 187 (12th ed. 1955). *See* Lewis v. United States, 38 F.2d 406 (9th Cir. 1930). Admission of these statements did not, therefore, constitute error.

2. Appellants assert that, in the trial court's preliminary instructions to the jury, the court did not give appellants' requested charge as to the distinction between direct and circumstantial evidence, and, according to appellants, the subsequent proper charge given at the close of the trial only confused the jury and did not cure the earlier error. This contention is meritless. Appellants fail to point out any alleged defects in the charge and do not show how the charge harmed them. We have carefully examined both charges, and any possible error in the preliminary charge was surely cured by the subsequent instructions.

3. Appellants object to the testimony of Roland Stevens, a Government witness. Stevens testified that, in the years 1955 to 1957, he encountered difficulties in operating a ready-mix concrete company in competition with appellant Anderson-Dunham, Inc. He further testified that, during the same period of time, Dunham attempted to force him to agree to divide the ready-mix concrete market between them. Appellants contend that this testimony was inadmissible because it recounted events remote in time to the period from 1966 to 1969 covered by the indictment. Although criminal defendants may not be convicted for acts occurring prior to the period of time spanned in the indictment, federal courts in antitrust cases have, for the purpose of showing intent, consistently admitted evidence of conduct prior to the time covered by the indictment. *See, e. g.,* United States v. Reading Co., 253 U.S. 26, 40 S.Ct. 425, 64 L.Ed. 760 (1920); Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); United States v. Schine, 260 F.2d 552 (2d Cir. 1958), cert. denied, 358 U.S. 934, 79 S.Ct. 318, 3 L.Ed.2d 306 (1959); Kansas City Star Co. v. United States, 240 F.2d 643 (8th Cir.), cert. denied, 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957); American Tobacco Co. v. United States, 147 F.2d 93 (6th Cir. 1944), aff'd 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575 (1946); United States v. Pullman Co., 50 F.Supp. 123 (E.D.Pa.1943), aff'd by an equally divided court, 330 U.S. 806, 67 S.Ct. 1078, 91 L.Ed. 1263 (1947); 2 Wigmore on Evidence § 302 (3d ed. 1940); *cf.* Federal Trade Commission v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948); Panotex Pipe Line Co. v. Phillips Petroleum Co., 457 F.2d 1279 (5th Cir. 1972). The jury was here instructed to consider this "background evidence" solely for the purpose of showing the purpose and character of the particular transactions covered by the indictment, so it was proper to admit evidence of a course of conduct engaged in in previous years to assist the jury in attempting to determine whether or not appellants possessed the requisite intent to restrain trade during the years covered by the indictment.

4. Appellants argue that their cross-examination of Wallace Heck, a Government witness, was unduly restricted by the trial court. Heck was an alleged victim of the charged conspiracy, and appellants sought to impeach his credibility by showing that he had settled a state court civil suit that had criminal implications. The trial court correctly sustained Government counsel's objection to this line of questioning, because only prior convictions of felonies or of misdemeanors involving moral turpitude are admissible in evidence to impeach the credibility of a witness. Leary v. United States, 383 F.2d 851 (5th Cir. 1967), rev'd on other grounds, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). *See also* Brown v. Coating Specialists, Inc., 465 F.2d 340 (5th Cir. 1972).

5. Appellants assert that the trial court erred in reading the indictment to the jury as part of the charge and in permitting the jury to take a copy of the indictment into the jury

room. The trial court, both at the beginning of the trial and in its final instructions, specifically instructed the jury that the indictment was not evidence but was merely the formal manner by which the Government accuses a person of a crime. In the light of these clear instructions, and in the absence of a timely objection on either point, we hold that the trial court committed no error in reading the indictment to the jury, *see* Kroll v. United States, 433 F.2d 1282 (5th Cir. 1970), cert. denied, 402 U.S. 944, 91 S.Ct. 1618, 29 L.Ed.2d 112 (1971), nor did it abuse its discretion by permitting the jury to have a copy of the indictment present during their deliberations, *see* United States v. Smith, 460 F.2d 1323 (5th Cir. 1972); United States v. Green, 433 F.2d 946 (5th Cir. 1970).

6. Appellants object to a written message sent by the trial court to the jury. Appellants contend that the message imposed a deadline for reaching a verdict and "blasted them into a conviction." The record does not show, however, what this written message stated, so we cannot speculate about its effects. Appellants did not request that the contents of this message be included in the trial transcript, nor have they sought to supplement the record under Rule 10(c), F.R.A.P. The burden of supplementing the record is on the party seeking to enlarge the transcript, and a failure to comply with Rule 10(c) leaves the matter outside the record. Browder v. United States, 292 F.2d 44 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 366, 7 L.Ed.2d 193 (1961). An appellate court cannot go behind the record, Smith v. United States, 343 F.2d 539 (5th Cir.), cert denied, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965), so appellants' contention must be rejected for want of a sufficient record on appeal. *Cf.* Sanford Brothers Boats, Inc. v. Vidrine, 412 F.2d 958 (5th Cir. 1969).

Affirmed.