UNITED STATES of America,
Plaintiff-Appellee,

v.

Barry Byron MILLS, Daniel James Cavanaugh, Robbin Lynn Bryan Cavanaugh, Martin Trevino Vargas, Jr., Defendants-Appellants.

Nos. 77–1448, 77–1449, 77–1450
and 77–1747.

United States Court of Appeals,
Ninth Circuit.

May 25, 1979.

Michael B. Read, Sacramento, Cal., Roger K. Vehrs, Fresno, Cal., Russell G. Vanroze-

boom, Kingsburg, Cal., Vincent J. McGraw, Fresno, Cal., for defendants-appellants.

Dwayne Keyes, U. S. Atty., Fresno, Cal., for plaintiff-appellee.

Before BROWNING and HUG, Circuit Judges, and SCHWARZER *, District Judge.

HUG, Circuit Judge:

On June 8, 1976, Martin Vargas and Barry Mills entered the Mayfair Branch of Lloyd's Bank in Fresno. Vargas threatened a bank employee with a handgun and they took over $100,000 in cash. Daniel Cavanaugh drove the "get-away car". Robbin Bryan,[1] a companion of Cavanaugh, attempted to flee to Canada with Cavanaugh thereafter.

All four parties were jointly charged and tried together by jury. Vargas, Mills and Cavanaugh each were convicted of armed bank robbery, in violation of 18 U.S.C. § 2113(d). Bryan was convicted of being an accessory after the fact, 18 U.S.C. § 3. Each defendant appeals from his or her conviction on several grounds.

We affirm.

## I. *ROBBIN BRYAN*

### A. *Motion for Severance*

■ Bryan contends that the trial court erred in denying her motion to sever her trial from that of her co-defendants pursuant to Fed.R.Crim.P. 14. We disagree.

■ The four appellants were "alleged to have participated in the same . . . series of acts or transactions constituting the offenses charged". Therefore, the appellants were properly joined for trial pursuant to Fed.R.Crim.P. 8(b). *See United States v. Adams*, 581 F.2d 193, 197 (9th Cir.

---

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

1. Daniel Cavanaugh and Robbin Bryan are now married, and Robbin has taken the name "Cavanaugh". To avoid confusion, we will continue to refer to her as "Bryan" in this opinion.

1978). Because the joinder of parties was authorized by Rule 8(b), the denial of the motion for severance under Fed.R.Crim.P. 14 will not be disturbed unless Bryan can prove that the court abused its discretion; the test is whether a joint trial was so prejudicial as to require the judge to exercise his discretion in but one way. *Id.* at 197–98.

Bryan has failed to make the requisite showing of prejudice. The jurors could easily compartmentalize the evidence against the defendants. *See United States v. Hobson,* 519 F.2d 765, 772 (9th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261 (1975). Moreover, the instructions to the jury were calculated to minimize any prejudice resulting from joinder. *See Adams,* 581 F.2d at 198. We find no abuse of discretion.

### B. Comment on Exercise of Constitutional Right

■ Bryan complains that a federal agent impermissibly commented on her right to remain silent after arrest, when the agent testified at the trial that Bryan consented to talk to the agent "on a selective basis". Bryan argues that the district court erred in denying her motion to strike the testimony.

In *United States v. Haro-Portillo,* 531 F.2d 962 (9th Cir. 1976), an arrested suspect voluntarily talked to a federal agent for a time, after which he refused to answer any more questions. We held that the suspect's constitutional right to remain silent was not violated when the agent testified at trial to the substance of their conversation, without commenting further on the defendant's assertion of his right. *Id.* at 963–64.

In the present case, the agent testified, in relevant part:

She read the forms that I had read to her; she stated she understood these rights; she did say that, at some point, she would like to talk to an attorney; I told her that she was not in the Continental United States at the time; there was no way that I could provide her with an attorney; she said she understood this, but she still desired to talk to me regarding this on a selective basis.

The witness in this case did no more than did the witness in *Haro-Portillo.* Bryan's rights were not violated.

### C. Sufficiency of the Evidence

■ Bryan contends that there was insufficient evidence to prove that she acted with "actual knowledge" of Cavanaugh's participation in the robbery, an essential element of her offense of accessory after the fact.

■ The verdict of the jury must be sustained if there was "'relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in light favorable to the Government'". *United States v. Rojas,* 554 F.2d 938, 943 (9th Cir. 1977). Actual knowledge, as an element of the offense of accessory after the fact, may be shown entirely through circumstantial evidence. *See U. S. v. Rux,* 412 F.2d 331, 333 (9th Cir. 1969).

In this case, the evidence showed that Bryan purchased a car with 150 twenty-dollar bills two days after the robbery, and that she sold the car for half the purchase price two weeks later. Bryan and Cavanaugh were apprehended together as they attempted to enter Canada. The trunk of the car in which they were apprehended contained a locked briefcase with over $18,-000 in cash inside. The key to the briefcase and a .357 Magnum handgun were found in Bryan's purse by border police.

There is substantial circumstantial evidence to support a finding that, beyond a reasonable doubt, Bryan had actual knowledge of Cavanaugh's participation in the robbery.

### D. Jury Instruction Regarding Actual Knowledge

The trial court instructed the jury that Bryan could not be found guilty of the offense of accessory after the fact unless she assisted Cavanaugh with "actual knowledge of his participation in the bank rob-

bery". Bryan requested an instruction defining "actual knowledge" as "positive knowledge in contrast to imputed or inferred knowledge". The court denied this request on the ground that it would erroneously lead the jury to believe that they could not infer actual knowledge from circumstantial evidence. We uphold the decision of the trial court.

■ The adequacy of the jury instructions is determined by examining the instructions as a whole. *United States v. Kaplan*, 554 F.2d 958, 968 (9th Cir.), *cert. denied sub nom. Stradley v. United States*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). The refusal to give a requested instruction will not be overturned "'if the charge as a whole adequately covers the theory of the defense'". *Id.* (quoting from *United States v. Blane*, 375 F.2d 249, 252 (6th Cir.), *cert. denied*, 389 U.S. 835, 88 S.Ct. 41, 19 L.Ed.2d 96 (1967)).

■ In this case, the jury was instructed that "[a]n act is done knowingly if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason". Additionally, the jury was instructed that Bryan could not be found guilty unless she acted "with the specific purpose or design to prevent or hinder apprehension, trial or punishment". Taken as a whole, the instructions regarding the requirement of actual knowledge were clearly sufficient.

## II. MARTIN VARGAS

### A. Admissibility of Evidence of a Subsequent Crime

■ Outside the presence of the jury, the government informed the court of its intent to introduce evidence of a similar bank robbery, to which Vargas had pled guilty. The trial court ruled that the evidence would be admissible for the limited purpose of proving identity or *modus operandi*, as permitted by Fed.R.Evid. 404(b). Vargas contends that the court committed reversible error by failing to make a finding that the two robberies were sufficiently similar to allow admission pursuant to Rule 404(b).

No evidence of the subsequent robbery was introduced at the trial; therefore, we need not consider whether the evidence was admissible under Rule 404(b). *See* 28 U.S.C. § 2111; *United States v. Moore*, 580 F.2d 360, 363 (9th Cir. 1978).

Vargas contends that the admissibility ruling deterred him from taking the stand. The admission of the evidence under Rule 404(b) was not conditioned upon Vargas taking the stand; thus the trial court's ruling could not have deterred Vargas from taking the stand. Furthermore, Vargas did not indicate his desire to take the stand nor move to preclude impeachment by evidence of the other crime under the provisions of Fed.R.Evid. 609(a). We find no error.

### B. Testimony of Billy Harris

■ Billy Harris, a convicted felon, testified against Vargas as a government witness. Vargas complains that Harris was given a reduced sentence on felony charges in exchange for his testimony and that Harris was "hostile" to Vargas. Vargas argues that Harris's credibility was so questionable that the admission of his testimony denied Vargas a fair trial.

Harris unquestionably was a competent witness. Fed.R.Evid. 601. Under present law the granting of a reduced sentence in exchange for testimony affects the weight, not the admissibility, of the testimony. *Darden v. United States*, 405 F.2d 1054, 1056 (9th Cir. 1969). The same is true with respect to hostility harbored by a witness against a party. *See Moore*, 580 F.2d at 364; *United States v. Kartman*, 417 F.2d 893, 897 (9th Cir. 1969). The credibility of the witness was a question for the jury.

### C. Vindictive Sentencing

■ Vargas was sentenced to twenty years in prison. The statutory maximum penalty for a violation of 18 U.S.C. § 2113(d) is twenty-five years. The sentence is within the statutory maximum and ordinarily is not reviewable. However, Vargas contends that a pretrial conference was held, at which there was some discussion of a possible plea bargain, and that the

district judge indicated that a lesser sentence would be appropriate if Vargas would plead guilty. There is nothing in the record on appeal to justify this assertion by the appellant. The pretrial conference was not reported and no mention was made of this contention at the time of sentencing, nor was any post-trial motion brought, raising this contention. Vargas relies solely upon an affidavit of his attorney appended to his brief on appeal. An affidavit of the prosecuting attorney was attached to the appellee's brief which reflected a different recollection of the conference, raising a factual dispute as to what occurred at the pretrial conference.

Consideration on this appeal cannot be given to these affidavits, because they are not a part of the record on appeal. *Frizell v. United States*, 394 F.2d 783, 794 (9th Cir. 1968). In order to augment the record on appeal concerning proceedings which were not reported, the provisions of Rule 10(c) of the Federal Rules of Appellate Procedure should be followed. Rule 10(c) requires that appellant must prepare a statement of the evidence or proceedings from the best available means. This statement is then served on the appellee, who may serve objections or propose amendments. The statement and any objections or proposed amendments are thus submitted to the district court for settlement and approval. Fed.R.App.P. 10(c); 7 Moore's Federal Practice, ¶ 210.06(2). This procedure affords the appropriate method to augment the record and to resolve any factual disputes as to the evidence or proceedings in the trial court.

Appellant made no attempt to follow the procedures prescribed by Rule 10(c). Nor did he attempt, during or immediately after the in-chambers conference, to preserve in the transcript the substance of the court's alleged remarks. It was his responsibility to do so in order to make a proper record for appeal. Since no record is provided upon which his claim can be evaluated, it must be denied. *United States v. Dunham Concrete Products, Inc.*, 475 F.2d 1241, 1251 (5th Cir. 1973).

*Brown v. United States*, 314 F.2d 293 (9th Cir. 1963) and *United States v. Piascik*, 559 F.2d 545, 550 (9th Cir. 1974) are distinguishable. In both cases the error complained of on appeal—failure to comply with the mandate of 28 U.S.C. § 753(b) that a record be made of "all proceedings in criminal cases . . . in open court"—was fully apparent on the face of the record on appeal. *See also United States v. Selva*, 546 F.2d 1173, *after remand*, 559 F.2d 1303 (5th Cir. 1977); *United States v. Workcuff*, 137 U.S. App.D.C. 263, 422 F.2d 700 (1970). In contrast, the error asserted in this case—enhancement of appellant's sentence because he elected to stand trial—is not reflected in the record on appeal. Failure to record the in-chambers proceedings in which the error allegedly occurred is not asserted as error, and clearly did not violate the statute.

Appellant will have an opportunity to raise his constitutional claim, and if necessary to resolve the dispute as to what occurred in the conference, in post-conviction proceedings under § 2255. In this respect, too, appellant is in a different position than *Brown*. *See* 314 F.2d at 295 n.1.

### III. *DANIEL CAVANAUGH*

Cavanaugh raises three contentions, the first of which is shared by Mills.

#### A. *Request for Continuance*

■ During its case-in-chief, the government called as a witness one Debbie Kenney whose testimony tended to incriminate both Mills and Cavanaugh. After she had testified, been cross-examined and dismissed, counsel for Cavanaugh and Mills requested a one-day continuance on the grounds she was a surprise witness and time was needed to obtain evidence to attack her credibility or to rebut her testimony. The trial court denied the motion. Cavanaugh and Mills both argue that the trial court abused its discretion in denying the motion for continuance.

■ The trial court has great latitude in granting or denying continuances. The Supreme Court in *Avery v. Alabama*, 308 U.S.

444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) stated:

> In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in the light of facts then presented and conditions then existing. Disposition of a request for continuance is of this nature and is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.

There are, of course, rare occasions when the denial of a continuance could be an abuse of discretion, but a clear abuse would have to be found. *See United States v. Michelson*, 559 F.2d 567, 572 (9th Cir. 1978); *Daut v. United States*, 405 F.2d 312, 315 (9th Cir. 1968), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971); Wright, *Federal Practice and Procedure*, Criminal § 832. There was no abuse of discretion in this case.

### B. *Hearing on Competence*

 Cavanaugh argues that the trial court erred by failing to initiate a hearing on his competence to stand trial.

 If the evidence is sufficient to raise a genuine doubt in the mind of a reasonable trial judge concerning the defendant's competence, due process requires the trial judge to hold a competency hearing on his own motion. *Bassett v. McCarthy*, 549 F.2d 616, 619 (9th Cir.), *cert. denied*, 434 U.S. 849, 98 S.Ct. 158, 54 L.Ed.2d 117 (1977); *see* 18 U.S.C. § 4244; *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The constitutional standard of competence is whether a defendant " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him' ". *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Bassett*, 549 F.2d at 618. Bare assertions by defendant's counsel that defendant is not competent to stand trial generally are not sufficient to raise the requisite doubt.

*See De Kaplany v. Enomoto*, 540 F.2d 975, 982–83 & n.8 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977); *see also United States v. Ives*, 574 F.2d 1002, 1004 (9th Cir. 1978).

In this case, the record reveals that Cavanaugh was alert, rational and responsive throughout the trial. Cavanaugh testified, at a hearing on a motion to suppress, that during the month immediately preceding trial, and at Cavanaugh's request, jail officials had given Cavanaugh sedatives that made him drowsy. However, there is no evidence that he took any drugs at the time of his trial. The only other evidence of incompetence consisted of the unsupported assertions of Cavanaugh and his counsel that the discomfort of living in a jail cell had impaired Cavanaugh's mental ability to testify and to respond to cross-examination.

The evidence was insufficient to raise a genuine doubt about Cavanaugh's ability to communicate rationally with his lawyer and to understand the proceedings against him. The trial court was not required to hold a competency hearing on its own motion.

### C. *Sentencing Criteria*

 In sentencing Cavanaugh, the trial judge took particular note of Cavanaugh's history of drug abuse, his lengthy criminal record and his failure to achieve rehabilitation during prior prison terms. Cavanaugh complains that the trial court gave excessive consideration to his use of illegal drugs.

A federal judge is granted wide discretion in sentencing and may "appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come". *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Stevenson*, 573 F.2d 1105, 1108 (9th Cir. 1978). We find no abuse of discretion.

## IV. *BARRY MILLS*

### A. *Appointment of New Counsel*

 One week before the date set for trial, Mills requested the substitution of ap-

pointed counsel. The appointed counsel had first appeared on behalf of Mills nearly two months earlier. In support of his motion for substitution, Mills asserted that he was unable to agree with counsel concerning a question of trial strategy and that his counsel had failed to prepare the case adequately. The trial court denied the request, finding that the attorney was competent and adequately prepared and that substitution of counsel at that date would cause an unwarranted delay in the trial. On appeal, Mills contends that he was entitled to a substitution of counsel because he was embroiled in an irreconcilable conflict with his attorney.

■■■ The denial of a motion to dismiss counsel is a matter resting within the sound discretion of the trial judge. *Good v. United States*, 378 F.2d 934, 935 (9th Cir. 1967). However, the court's discretion is not without limit. In *Brown v. Craven*, 424 F.2d 1166 (9th Cir. 1970), we held that refusal to allow the substitution of attorneys may result in a denial of the constitutional right to effective assistance of counsel if the defendant and his attorney are embroiled in an "irreconcilable conflict". *Id.* at 1170. In applying the rule developed in *Craven*, we consider a number of factors, including the timeliness of the motion to dismiss counsel, the adequacy of the court's inquiry into the defendant's complaint, and whether the conflict between the defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense. See *id.* at 1169–70; *United States v. Michelson*, 559 F.2d 567, 571–72 (9th Cir. 1977) (motion filed late); *United States v. Jones*, 512 F.2d 347, 350 (9th Cir. 1975) (adequate hearing); *United States v. Main*, 443 F.2d 900, 901 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971), (no showing of total lack of communication).

In this case, the court held an adequate and fair hearing on Mills's motion. The record shows that Mills and his attorney were not embroiled in a conflict resulting in a total lack of communication. Although Mills asserted at the hearing that he refused to discuss his "alibi defense" with his counsel, it was apparent that his counsel was able to prepare all other facets of the case. Indeed, at the hearing Mills complained more about the infrequency of his meetings with his attorney than about his reluctance to communicate with counsel. Mills's attorney ultimately presented an adequate defense which included the presentation of the alibi witness. Finally, we note that Mills did not present his motion until one week before trial, and substitution of counsel almost certainly would have delayed the trial. Under these circumstances, we hold that Mills was not deprived of effective counsel.

The trial court did not abuse its discretion in denying Mills's motion to dismiss counsel.

### B. Jury Instruction for Offense of Aiding and Abetting

■ The court instructed the jury that any one of the defendants charged with armed bank robbery could be found guilty of that offense if he either directly committed the offense or aided and abetted the commission of the offense.[2] Mills contends that the court committed reversible error by failing to instruct further that Mills could not be found guilty of aiding and abetting an armed bank robber unless he *knew* that the robber carried a deadly weapon.

■■■ Mills did not object to the instructions; therefore, he is entitled to no relief on appeal unless the omission from the jury instructions amounts to plain error. Fed.R.Crim.P. 52(b); *United States v. Houston*, 547 F.2d 104, 107–108 (9th Cir. 1976). We will not reverse for plain error unless it appears necessary to prevent a miscarriage of justice. *Id.; United States v. Eskridge*, 456 F.2d 1202, 1205 (9th Cir.) *cert. denied,* 409 U.S. 883, 93 S.Ct. 171, 34 L.Ed.2d 138 (1972).

---

**2.** Title 18 § 2(a) provides:
 Whoever commits an offense against the United States or aids, abets, counsels, com-

mands, induces or procures its commission, is punishable as a principal.

The jury was instructed generally that Mills could not be convicted unless he "willfully" aided another person committing armed bank robbery. The evidence shows that Mills passed within a few feet of Vargas while Vargas had his gun drawn inside the bank; it is difficult to conceive that the jury would have rendered a different verdict had it been specifically instructed that knowledge of the gun was an essential element. This differs from *United States v. Short*, 493 F.2d 1170 (9th Cir. 1974), relied upon by Mills, because in that case the trial judge had erroneously instructed the jury that knowledge of the weapon was not an element of the crime. There was no plain error.

## V. *CONCLUSION*

The judgment of the district court is affirmed.

WILLIAM W. SCHWARZER, District Judge, concurring.

I concur in the result reached by the majority.

I am, however, unable to join in Part II. C. of the majority opinion dealing with the issue of vindictive sentencing. The court holds that it will not consider the issue on appeal because appellant relies on an affidavit first presented here asserting facts not included in the record, instead of having complied with Rule 10(c) of the Federal Rules of Appellate Procedure.*

Rule 10(c) provides a method for including in the appellate record proceedings which were not reported and thus are not included in the transcript, such as those which allegedly occurred in chambers below. I am entirely in agreement that in the normal case, an appellant should not be entitled to raise an issue on appeal based on matters outside the record without compliance with Rule 10(c). See, *Murphy v. St. Paul Fire and Marine Insurance Co.*, 314 F.2d 30 (5th Cir.), *cert. denied*, 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146 (1963) (decided under the predecessor rule, Fed.R.Civ.P. 75(n)); 9 Moore's Federal Practice, ¶ 210.06.

It makes little sense to me, however, to elevate Rule 10(c) into a jurisdictional requirement, as the majority appears to do when it states that "consideration . . . cannot be given to these affidavits, because they are not a part of the record on appeal." P. 698. When the error asserted is of constitutional dimensions, as is the case here, a refusal to entertain the issue merely defers it to post-conviction review under Section 2255, a result which promotes neither judicial economy nor the defendant's right to speedy justice.

For that reason it appears to have been the practice of this and other courts of appeals, at least until now, to retain the option of entertaining substantial issues but remanding for compliance with Rule 10(c) where that procedure appeared necessary to insure a record adequate for review. *United States v. Piascik*, 559 F.2d 545, 547, 550 (9th Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978); *cf. United States v. Knox*, 456 F.2d 1024 (8th Cir. 1972); *but see, United States v. Dunham Concrete Products, Inc.*, 475 F.2d 1241, 1251 (5th Cir.), *cert. denied*, 414 U.S. 832, 94 S.Ct. 65, 38 L.Ed.2d 66 (1973) (reaching a contrary result).**

* Rule 10(c) provides:

(c) *Statement of the Evidence or Proceedings When no Report Was Made or When the Transcript is Unavailable.* If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal.

** The majority distinguishes *Brown* and *Piascik* on the stated ground that the error in those cases—failure to report all proceedings as required by 28 U.S.C. § 753(b)—was "fully apparent on the face of the record on appeal." The court made it quite clear in both cases, however, that the failure to report was not reversible error, but that it was the possibility that the record, if made, would disclose such

Inasmuch as I would not treat compliance with Rule 10(c) as being in effect jurisdictional, I would reach the merits of the claim. Viewing it in the light most favorable to appellant, based on the facts stated in the affidavit of Vargas' counsel, I would conclude that the claim is without merit and that no remand is necessary.

The exercise of a trial judge's broad discretion to impose a sentence within the statutory limits is reviewable where the facts raise an inference that the defendant was punished for electing to stand trial. In *United States v. Stockwell*, 472 F.2d 1186 (9th Cir.), *cert. denied*, 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973), the judge offered defendant a three-year sentence if he were to plead guilty but said that he would receive from five to seven years if he went to trial and were convicted. In *United States v. Capriola*, 537 F.2d 319 (9th Cir. 1976), a substantial disparity existed in the sentences imposed on defendants for the same criminal activity, depending on whether they pleaded guilty or stood trial. In both cases, this court remanded for re-sentencing upon a record which would show that the defendant's sentence was not punishment for having refused to plead guilty.

Unlike the facts in those cases, the facts submitted by Vargas raise no inference that the sentence was intended to punish him for having refused to plead guilty. The affidavit of Vargas' counsel merely states that at a conference in the trial judge's chambers, the possible length of incarceration of Vargas in the event of a guilty plea was discussed by the judge and counsel for the defendant and the government. Defense counsel requested a six-year sentence, the United States attorney objected, and the judge "stated that perhaps seven (7) to eight (8) years would be appropriate." Vargas makes no claim that an offer was ever made or that the judge stated what sentence he would impose if a plea bargain were reached. In these circumstances, the trial judge's exercise of his sentencing dis-

cretion is not reviewable. *See United States v. Stevenson*, 573 F.2d 1105, 1106 (9th Cir. 1978).

error that warranted remand to comply with Rule 10(c). *Brown, supra*, 314 F.2d at 295, note 1; *Piascik, supra*, 559 F.2d at 548. Moreover, reviewability of an allegedly serious error should not be allowed to turn on the fortuitous circumstance that it is apparent on the face of the record.