UNITED STATES of America,
Plaintiff-Appellee,

v.

Alphonse LEWIS, Jr.,
Defendant-Appellant.

No. 80–5183.

United States Court of Appeals,
Sixth Circuit.

Cause Argued Feb. 11, 1981.

Decided and Filed June 19, 1981.

J. Bruce Donaldson, Chirco, Donaldson, Herrinton & Runstadler, Detroit, Mich. (court-appointed), for defendant-appellant.

Albert A. Chappell, Pontiac, Mich., amicus curiae—NAACP.

James S. Brady, U. S. Atty., Robert C. Greene, Asst. U. S. Atty., Grand Rapids, Mich., M. Carr Ferguson, Asst. Atty. Gen., Michael L. Paup, James A. Bruton, Tax Division—Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and TAYLOR, District Judge.*

ANNA DIGGS TAYLOR, District Judge.

Alphonse Lewis, Jr., appeals from his conviction by a jury on two counts of a three-count Information. The District Court granted his motion for judgment of acquittal on a third count after a jury verdict of guilty of willful failure to pay federal income tax as required for the year 1973, in violation of 26 U.S.C. § 7203. This appeal is from convictions on Count I for willful failure to file a return for the year 1972; and on Count II for willful failure to pay the required tax for the year 1972. We reverse and remand for a new trial because of improper prosecution comment upon appellant's exercise of his constitutional rights not to incriminate himself and to consult with counsel. For purposes of the new trial, however, we will consider each of appellant's claims of error.

I. Improper Use of Peremptory Challenges.

■ Appellant, a black lawyer who has lived and practiced for approximately thirty years in the Grand Rapids, Michigan community, was convicted by an all white jury. He argues that the District Court erred in denial of his motion for mistrial after jury selection, when the prosecution had utilized only two of its three peremptory challenges, and had exercised them against the only two black veniremen drawn. Appellant claims that the prosecutor's actions constituted a violation of his Sixth Amendment right to a jury drawn from a representative cross-section of his community.

We cannot agree, however, with appellant's contention that the prosecutor's exercise of peremptories in this case, under the facts and circumstances presented by the record of the voir dire, constituted a systematic use of peremptories to exclude a distinctive minority group. It would not be appropriate or fruitful, therefore, to accept appellant's invitation to reexamine the teachings of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *reh. den.*, 381 U.S. 921, 85 S.Ct. 1528, 14 L.Ed.2d 442 (1965), on this occasion.

The prosecutor stated on the record his reasons for peremptory excuse of appellant's two black veniremen. Those reasons are supported in the voir dire and they are not objectionable. Venireman Loretta Durham was a widowed mother of three who had been unemployed for the past three years, and therefore had paid no taxes. She was the only unemployed venireman drawn. Venireman Wallace Young stated that he had become acquainted with appellant during his thirty years of residence in the Grand Rapids community; that he spoke to appellant on sight; and that he himself had difficulty with the Internal Revenue Service in 1956. After his discharge from the Army, IRS had required him to make immediate payment of $78.00 in back taxes, and he had been forced to borrow the money. He felt that IRS "... could have gave me the time to get myself together." No veniremen were stricken for cause. Under the circumstances, denial of appellant's motion for mistrial on this basis was not error.

II. Sufficiency of the Evidence.

■ Appellant next argues error in the denial of his motion for judgment of acquittal on Count I; the willful failure to file a

---

* Honorable Anna Diggs Taylor, District Judge, United States District Court, Eastern District of Michigan, sitting by designation.

return for 1972. He contends that the government's evidence, consisting of a certificate of nonfiling from the IRS Service Center and the testimony of an authorized Center employee that there existed no record of appellant's having filed a 1972 return, was insufficient to take the case to the jury because it was so far outweighed by the testimony of appellant's wife that he had mailed his return and the further testimony of his daughter and former secretary, that he had been engaged in preparing his return on Sunday, April 15, 1973. There is no contention of a total lack of evidence on that count.

Denial of the motion was not error. The evidence, on such a motion, must be viewed in the light most favorable to the government. *United States v. Garavaglia*, 566 F.2d 1056 (6th Cir., 1977). The relative credibility of appellant's wife's testimony (which was his only evidence of filing), as against that of the IRS computer records in not to be weighed by the District Court on motion for acquittal or by this court on appeal. The question was one for the jury, and there was sufficient evidence for a rational trier of fact to find the essential elements of the crime beyond reasonable doubt.

Similarly, although the government's evidence against appellant on Count II for willful failure to pay his 1972 taxes was thin, it was sufficient to take that count to the jury, and sufficient to sustain a conviction. The District Court was not empowered and the jury was not required to find that appellant's expert witness was more credible than the government's, whom appellant had thoroughly cross-examined. There was sufficient evidence to support the jury's implicit conclusion that appellant's 1972 tax liability was $892.00, as contended by the government, and that his assets were sufficient to pay that sum, despite appellant's evidence and expert testimony to the contrary.

III. Response to Jury Questions.

   ■ Appellant also cites as error the District Court's reiteration of two portions of its original jury charge and another new instruction on bias of witnesses on two occasions, in response to questions from the deliberating jury. They were a standard federal charge on credibility and bias of witnesses, and the instruction on findings of regularity in performance of duty, both from *Federal Jury Practice and Instructions*, 3d ed., Devitt and Blackmar, § 17.01 and § 15.04 respectively. To those the court added the instruction of "Impeachment: Bias or Prejudice," of § 17.07. Appellant does not challenge the correctness of those instructions as statements of the law, but argues that their repetition was prejudicial in combination with the "Allen" deadlock charge which he also contends was given, and in the absence of a simultaneous reiteration of the government's burden of proof beyond a reasonable doubt.

Although the jury did report itself to be deadlocked on the second day of deliberations the District Court did not ever, as appellant argues, give the so-called "Allen" charge. It gave, instead, the instruction recommended for an unseasonable jury at Devitt and Blackmar § 18.15 and approved by this court in *United States v. Nickerson*, 606 F.2d 156 (6th Cir., 1979), *cert. den.*, 444 U.S. 994, 62 L.Ed.2d 424, 100 S.Ct. 528 (1979).

There was no prejudice to appellant or error in any of the instructions which were given to the deliberating jury. It was improper, however, particularly in view of the thinness of the evidence against appellant and the jury's obvious difficulty in weighing the credibility of interested witnesses against that of computer printouts, not to instruct simultaneously on each occasion as to the government's burden of proof beyond reasonable doubt. Although we do not reverse for this reason, the problem is noted for purposes of the second trial.

IV. Impermissible Comment on the Exercise of Fifth Amendment Rights.

   ■ IRS Special Agent William L. Rohde was the lead investigative agent in this case, and was the government's second witness in its case in chief. He took the stand

on the first day of trial. The defense had reserved opening statement. The prosecutor asked Agent Rohde to describe his first meeting with appellant, at appellant's office on May 13, 1974. "Could I make reference to my Memorandum of Interview?", was Rohde's first response, and a foundation was thereafter laid for the use of that memorandum to refresh the witness' recollection. Thereafter, by fifteen direct questions, the first fourteen of which were directly answered, the prosecutor elicited much of what was said at that first meeting, including Rohde's reciting to appellant advice of his constitutional right not to incriminate himself, that any information given may be used against him in a criminal proceeding, and of his right to seek assistance of counsel before responding, as well as appellant's acknowledgment that he understood those matters. After ten more direct questions and answers, the prosecutor stated: "Q. · Fine." Agent Rohde, without warning, then embarked upon a narrative of some length which included references to appellant's prior and other ongoing difficulties with IRS, evidence of which had been excluded by the court prior to trial on a defense motion in limine, as well as three refusals of the appellant to answer Rohde's questions and two assertions of appellant's right to counsel, after which the interview was concluded. Defense counsel made an immediate motion for mistrial, out of the presence of the jury, on the basis of both the violation of the order in limine and the violation of the defendant's Fifth Amendment rights which had occurred. The order in limine had required that no evidence be presented which (a) disclosed any prior failure to file or (b) disclosed collection activity to the extent it would reflect other disputed tax liability. Both facets of that order were violated.

It had been apparent to the court and to the prosecutor, but not to defense counsel, that the witness was reading aloud from his memorandum, in giving his unresponsive and prejudicial answer. Accordingly, the

prosecution argued and the District Court held that, inasmuch as the defense had been provided with a copy of the memorandum of interview during pretrial discovery, it had waived its objection by failing to file a motion to suppress the evidence prior to trial.

That ratiocination will not pass muster. There was no reason for the defense to file a motion to suppress the memorandum, inasmuch as it was not illegally obtained evidence; and the government had served no notice of its intention to use the memorandum as evidence in order to afford the defense the opportunity to object, under Federal Rule of Criminal Procedure 12(d)(1). Moreover, the document was not offered as evidence, and there was accordingly no opportunity to object to it at trial. As a document being utilized to refresh the recollection of a witness, its admissibility would have been completely within the control of the defense as adverse party, under Federal Rule of Evidence 612. Also, in view of the settled prohibition against comment upon a defendant's exercise of his *Miranda*[1] rights after advice of those rights; and in view of the order in limine which had been obtained, the defense was reasonable in entertaining the expectation that the testimony of the witness, regardless of the content of the unoffered memorandum, would be within the parameters of the law.

The government has also claimed waiver of objection in defense counsel's failure to interrupt the witness immediately after his first statement implicating the assertion of a constitutional right. The defense could not have foretold, however, the recitation of every prejudicial word of the memorandum, even had he fully realized that it was being read. Moreover, defense counsel was then compelled by the government's action to make the strategic election to either aggrandize or minimize the significance of those statements, in the presence of the jury. He elected the latter course, in the

1. *Miranda v. Arizona*, 384 U.S. 436, 467–473, 86 S.Ct. 1602, 1624–1627, 16 L.Ed.2d 694 (1966).

event his motion might be denied; and that election will not be construed as a waiver.

The motion for mistrial was denied because of the defense failure to move to suppress the memorandum as evidence, and because the District Court found that Rohde's comments had not been so emphasized as to be prejudicial. The District Court announced to counsel that the references to appellant's refusals to answer were "hereby struck from the record", in ruling on the mistrial motion: but the record does not indicate that the jury was ever so advised. The curative value of such an instruction at that time would be dubious at any rate. The District Court did include in its ultimate instructions to the jury a charge that "... no presumption of guilt may be raised and no inference of any kind may be drawn from any failure of the defendant to respond to requests for information from the government."

In his final argument to the jury, the prosecutor included the statement:

"... just in case, have a good attorney, just in case.

Ladies and gentlemen, that is what you have learned ... how you do not have to pay your Federal income tax. That is the method. Simple."

The government argues that this statement was not prejudicial either, because it was not "explained or amplified."

It is noteworthy that the agent's testimony as to appellant's exercise of his rights was not inadvertently elicited. The government intentionally presented it to rebut the anticipated defense claim of inadequate investigation. It argues here that the evidence is admissible for that purpose, although it disclaims any suggestion that guilt may be inferred from appellant's claim of the Fifth Amendment. Unfortunately, the agent's unnecessary and irrelevant testimony that he first advised appellant of his *Miranda* rights, and asked appellant if he understood those rights, made that inference inevitable.

Also, this "rebuttal" occurred on the first day of trial, in the government case in chief, and despite the fact that the defense had reserved opening statement. Although the government pleads necessity, it was well prepared to meet the defense of inadequate investigation when it was in fact later raised in defense cross-examination of government witnesses. It did so with the entry into evidence of the Registered Mail demand which Agent Rohde had directed to appellant, requesting any and all copies of tax returns, the books and records on which they were based, and all records, instruments and indicia of any and all beneficial interests for the period under investigation. That enumeration encompassed all of the questions which Rohde testified that appellant had refused to answer at their first meeting.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), on habeas corpus petition the state pleaded necessity as in this case, in justification of the prosecutor's impeachment of defendants' exculpatory testimony, by cross-examination on post-arrest silence. Justice Powell noted that, although the state did not suggest that petitioners' silence could be used as evidence of guilt, it argued that evidence of post-arrest silence was necessary to provide the jury with all information relevant to the truth of their testimony at trial. He found that the *Miranda* decision compelled rejection of the State's position. Justice Powell wrote for the court that:

Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. (426 U.S. at 618, 96 S.Ct. at 2245).

Inasmuch as the state did not claim harmless error in that case, the convictions of the Petitioners were overturned.

Justice Powell has written for the court in another comment-on-silence case more recently, and in that opinion clarified the

narrow parameters of the prohibition. In *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the habeas petitioner had been impeached on cross-examination by his pre-arrest silence and the court found no violation of the Fifth and Fourteenth Amendments to have occurred. Justice Powell noted that, only in *Doyle v. Ohio, supra,* had the court found that impeachment by silence violated the Constitution, and that in *Doyle* the defendant had received the warning required by *Miranda, supra,* when he had been arrested and had then made no statements to the police. Conversely, he wrote:

> In this case, no governmental action induced petitioner to remain silent before arrest. The failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings. Consequently, the fundamental unfairness present in *Doyle* is not present in this case. We hold that impeachment by use of prearrest silence does not violate the Fourteenth Amendment. (447 U.S. at 240, 100 S.Ct. at 2130).

Clearly, the operative fact in both *Doyle, supra,* and *Jenkins, supra,* is not the fact of the arrest but the fact of the giving of *Miranda* warnings.

The rule of *Doyle, supra,* has long been observed in this Circuit. In *Minor v. Black,* 527 F.2d 1 (6th Cir., 1975) *cert. den.,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1198 (1976), petitioner's cross-examination elicited his post-arrest silence on advice of counsel in reliance upon his *Miranda* rights. Judge Peck wrote that constitutional error had occurred, and required reversal unless harmless beyond reasonable doubt. To make such a finding of harmlessness, the court would have to find that absent the improper cross-examination and closing argument which had occurred, no juror could have entertained a reasonable doubt as to petitioner's guilt. Inasmuch as the evidence of guilt had been "far from overwhelming" in that case, and as evidence of post-arrest silence could easily have been prejudicial, and assigned much more weight than warranted by the jury, the conviction was overturned.

In *Meeks v. Havener,* 545 F.2d 9 (6th Cir., 1976), *cert. den.,* 433 U.S. 911, 97 S.Ct. 2980, 53 L.Ed.2d 1096 (1971), this court found the testimony of a police officer of defendant's post-arrest silence after *Miranda* warnings to have been violative of *Doyle, supra,* but harmless beyond reasonable doubt because of overwhelming evidence of guilt.

Again, in *Moore v. Cowan,* 560 F.2d 1298 (6th Cir., 1977), *cert. den.,* 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 529 (1978), this court found that testimony concerning a defendant's silence during custodial interrogation was violative of the Fourteenth Amendment, as it incorporated the Fifth; but that as the questions were not prominent, the subject was not raised in final argument by the prosecution, and the untainted evidence of guilt was such that no juror could have entertained a reasonable doubt, the petition was dismissed.

Subsequent to the Supreme Court's recent *Jenkins* decision, the Second Circuit Court of Appeals has considered a case in which, like this one, the prosecution elicited evidence of the defendant's silence as part of its case in chief. In *United States v. Gonzales Caro,* 637 F.2d 869 (2d Cir., 1981), Judge Friendly wrote:

> Whatever the future impact of *Jenkins* may be, we have found no decision permitting the use of silence, even the silence of a suspect who has been given no *Miranda* warnings and is entitled to none, as part of the Government's direct case. While *Jenkins* may require a re-examination of lower court decisions extending *United States v. Hale,* 422 U.S. 171 [95 S.Ct. 2133, 45 L.Ed.2d 99] and *Doyle v. Ohio, supra* . . . to the silence of a suspect who has been taken into custody but has not received *Miranda* warnings, see *United States v. Impson,* 531 F.2d 274, 277 (5th Cir., 1976); *Bradford v. Stone,* 594 F.2d 1294, 1295 (9th Cir., 1979); *United States v. Nunez-Rios,* 622 F.2d 1093, 1101 (2d Cir., 1980); *People v. Conyers,* 49 N.Y.2d 174, 424 N.Y.S.2d 402, 406–07, 400 N.E.2d 342 (4–3) (1980), we are not confident that *Jenkins* permits even evidence

that a suspect remained silent before he was arrested or taken into custody to be used in the Government's case in chief. We will thus assume, without deciding that even if we were to hold that Gonzales was not in custody during the ripping apart of his suitcase ... this would not necessarily carry the day for the prosecution in light of the fact that *all of the cases permitting proof of silence, including Jenkins, have involved impeachment or rebuttal of the defendant's testimony.* (Emphasis added, 637 F.2d 869, 876).

However, inasmuch as the above-described evidence could have been introduced to rebut Gonzales' subsequent testimony that he was shocked to see counterfeit bills in his suitcase, Judge Friendly found that the error was harmless beyond reasonable doubt.

Appellant in this case did not take the stand. The defense effort to imply inadequate investigation was through cross-examination of agents: and the government met it by introduction of documentary evidence of their demands upon appellant for returns, books and records.

The prosecution seeks to analogize this case to two Ninth Circuit decisions which found no error in agents' testimony of post-arrest refusals to answer questions. In *United States v. Haro-Portillo*, 531 F.2d 962 (9th Cir., 1976), the defendant testified that he had no knowledge of the narcotic drugs attached to the frame of the truck he was driving. An agent testified that, in post-arrest interrogation, there came a time at which defendant would answer no further questions. The court wrote:

> The agent simply explained what happened and related the conversation until it was terminated. No violation of appellant's rights occurred in this testimony and the denial of the motion for mistrial was correct. (531 F.2d at 963–964).

Although the brevity of that opinion precludes real analysis, it appears to present circumstances similar to those described by Judge Friendly in *Gonzales, supra*, in which exculpatory testimony was rebutted and prejudice was minimal. In *United States v. Mills*, 597 F.2d 693 (9th Cir., 1979), an agent testified that he gave the defendant her *Miranda* warnings and she requested an attorney. He explained that as she was not in the continental United States at the time, there was no way that he could provide one. Then, "she said she understood this, but she still desired to talk to me regarding this on a selective basis." The court held:

> The witness in this case did no more than did the witness in *Haro-Portillo*. Bryan's rights were not violated. (597 F.2d at 696).

As the posture of events in that lawsuit are unknown: whether the defendant testified and if so whether in contradiction of her "selective" statements, whether the agent's testimony was rebuttal, and whether it was harmless, that opinion cannot be applied intelligently here. There is substantial law which instructs that this appellant's rights as assured by the Fifth Amendment of the Constitution were violated by the emphatic testimony elicited in the government's case in chief that appellant was warned by the government of his rights and then sought repeatedly to exercise them. Moreover, the prosecutor's allusion to appellant's reliance upon counsel in closing argument compounded the injury.

The error which occurred was not harmless beyond reasonable doubt. The evidence against appellant was far from overwhelming: it was barely sufficient to withstand motions for acquittal. The jury's difficulty in reaching a verdict is obvious. It reported itself deadlocked and had required two additional instructions on evaluation of the credibility of appellant's wife vis-a-vis that of a computer (and the United States Post Office). Appellant did not have the benefit of an instruction on the prosecution's burden of proof beyond reasonable doubt on either of those latter occasions. The District Court's order in limine had also been violated, to appellant's prejudice; and he never took the witness stand. Moreover, appellant was an attorney accused of violation of the law whose refusal to answer questions based upon a claim of constitu-

tional right (unlike *Mills* and *Portillo, supra*) was presented to the jury gratuitously.

Reversed and remanded.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the majority's opinion relating to alleged improper use of peremptory challenges, sufficiency of evidence on Counts I and II, and the language of the jury instructions. Like the majority, I would not reverse the District Court for its failure to repeat the instruction regarding the government's burden of proof when answering a question of the deliberating jury. However, I cannot join in the remainder of the majority's opinion because I find that the defendant's failure to object to references to his unwillingness to answer four of many questions asked him by Agent Rohde constituted a waiver of any objections.

The standard for reviewing the court's denial of a motion for mistrial is one of abuse of discretion. *United States v. Perez,* 22 U.S. 578 (9 Wheat.), 6 L.Ed. 165 (1824). I do not find that standard met here. At trial, Agent Rohde testified that he had prepared a contemporaneous statement of what occurred during the course of the May 13, 1974 interview. He testified that he had no independent memory of what was said during that meeting. Several minutes were spent describing the manner in which the memorandum was prepared and what it purported to describe. The only purpose that testimony could have would be to permit the use of the statement while he testified. The testimony which the majority holds requires reversal occurred when Agent Rohde read from this memorandum. Defendant admits that a copy of that memorandum was provided to his counsel prior to trial. The majority characterizes Agent Rohde as commencing to read the memorandum "without warning." The relevant portions of the transcript do not indicate that the agent's recitation was without warning. As stated, the agent expressly referred to the memorandum, its authentic-

ity had been established to permit its use to refresh his recollection or as past recollection recorded, and the agent clearly stated that he had no independent recollection of what occurred at the meeting and would have to use the memorandum to refresh his recollection.

The majority states that after fifteen direct questions had "elicited much of what was said at that first meeting" and that "[a]fter ten more direct questions and answers, the prosecutor stated: 'Q. Fine.'" However, all of the questions regarding the interview itself were in the form of "what occurred after that" or "and then what occurred." The balance of the questions sought explanation of some portion of the agent's previous answer or related to exhibits. The Assistant United States Attorney's remark "Fine" came in the following series of questions:

Q. After you made the inquiry on the '72, '73 returns, what occurred?

A. With respect to Mr. Lewis's interview?

Q. Yes.

A. I specifically asked Mr. Lewis if he had filed 1972 and 1973 federal income tax returns. He replied that he had filed for 1973.

Q. What was the date of this interview again?

A. The date of this interview is May 13, 1974.

Q. Fine.

"Fine" was merely encouragement to have Agent Rohde continue his recital from the memorandum of what occurred at the interview.

I find unpersuasive defense counsel's explanation that he did not know that Agent Rohde was reading from the memorandum because he could not see what the agent had in front of him. Review of that portion of the trial transcript relating to the memorandum makes abundantly clear that the agent was about to read, and then did, in fact, read the statement at issue.[1]

---

1. The District Court compared the memorandum and the agent's testimony and found that they were identical; this finding and the finding

that the agent was reading from the memorandum are not alleged to be erroneous.

Only after Agent Rohde had read the entire memorandum did defendant object and move for a mistrial. Even had counsel not been provided with a copy of the memorandum, he should have objected after the first oblique reference to defendant's refusal to answer a specific question. Here counsel had the memorandum and could not help but know what was coming. This purposeful courting of error should in this case be attributed to defense counsel's trial tactics.

Upon objection, the District Court immediately suspended Agent Rohde's testimony to hear argument, consider, and rule on defendant's motion for mistrial. After hearing arguments the District Court decided to strike all references to the defendant's comments that he would not answer certain questions and to his desire to meet with counsel. The court found that although there were some offending comments, they were read by the agent in a "perfunctory manner," and not emphasized by him.

Although defendant refused to answer certain questions he continued to answer others. Thus, he did answer that he had filed his returns for 1972 and 1973, and in response to the questions of who prepared the returns he testified that he had. The only question he refused to answer was whether the returns were late-filed. Defendant, who is an attorney, stated during the interview that he was going to talk to his attorney. Agent Rohde concluded his testimony with the statement:

Lewis then told of an appointment with Bruce Donaldson, an attorney in Detroit, on May 24, and promised that the taxpayer or his attorney would call Rohde on May 28th. The interview was then concluded.

The prosecutor made no comments on the defendant's invoking the Fifth Amendment privilege. None of defendant's refusals to answer questions were characterized, either in the report or by the prosecutor, as the exercise of his constitutional right against self-incrimination. The prosecutor did not persist in eliciting testimony on this subject nor was there evidence of deliberate prosecutorial misconduct.

The objected-to agent's testimony was only a minute portion of a lengthy and complicated trial that focused on large amounts of documentary exhibits and the conflict in testimony between the government's and the defendant's expert witnesses. The court struck the testimony and as requested by defendant the jury was properly instructed at the end of the trial that "[no] presumption of guilt may be raised and no inference of any kind may be drawn from any failure of the defendant to respond to requests for information by the Government." In view of the above circumstances, the District Court did not abuse its discretion in finding defendant so prejudiced as to justify granting his motion for mistrial.

Nor do I find highly prejudicial and warranting a new trial the prosecutor's isolated remark in closing argument "... just in case, have a good attorney, just in case." Defendant's interpretation that this remark improperly "alluded" to the earlier remarks of Agent Rohde concerning defendant's refusal to give information at the first interview is unreasonable. That remark was not explained or amplified by the prosecutor and does not immediately suggest an attempt to comment on the defendant's failure to testify or provide the agents with information. The defendant did not object to the comment or request a curative instruction. In fact, defendant's counsel replied to the prosecutor's comment in his own closing argument. The defendant's obscure interpretation of the prosecutor's unamplified and, at worst, ambiguous statement in closing argument is simply too speculative to warrant reversal of his conviction on that ground.

I would, therefore, affirm the judgment of the District Court.