91 F.3d 156
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
David PALMER, Defendant-Appellant.
 No. 94-50301.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided July 8, 1996.
 
 Before: FLETCHER, BEEZER, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 David Palmer appeals his conviction of aiding and abetting the robbery of a credit union. Palmer argues that the district court erred by 1) denying the motions of his trial counsel to be relieved on the basis of attorney-client conflict, and 2) excluding as hearsay two tape-recorded conversations. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.
 
 I. BACKGROUND
 
 3
 In March 1992, Ronald Carrington robbed $1,440 from the Telephone Employee Credit Union of Riverside, California. Soon thereafter, the police captured Carrington in a car being driven by Palmer. Palmer claimed he had nothing to do with the robbery, maintaining he had run into Carrington near the credit union and was simply giving him a ride.
 
 
 4
 In May 1993, a grand jury indicted Palmer for aiding and abetting the robbery of a credit union in violation of 18 U.S.C. §§ 2113(a) and 2(a). Trial began in January 1994. The government presented the testimony of Carrington, who had plead guilty and had entered a cooperation agreement with the government. Carrington testified that Palmer helped him plan the robbery and drove him to the credit union. Carrington's sister testified that on the day of the robbery, Palmer and Carrington left Carrington's house together in Palmer's car.
 
 
 5
 Gregory Nicolayson represented Palmer at trial. Nicolayson planned to put Derek Barton on the stand to testify that it was Barton (and not Palmer) who drove Carrington to the credit union. However, on the first day of trial, Barton revealed that this testimony was false. Nicolayson immediately withdrew Barton as a witness for the defense. When Barton subsequently met with the government, he revealed that Palmer had asked Barton to lie on his behalf. The government added Barton to its witness list, intending to prove that the attempt to suborn perjury demonstrated consciousness of guilt.
 
 
 6
 On the fourth day of trial, the government produced tape recordings of many of the telephone calls made by Palmer from the Metropolitan Detention Center while he was awaiting trial, including calls to Barton. After listening to the tapes, Nicolayson moved to be relieved from representing Palmer on the grounds that "defense counsel is being portrayed as a victim of a bit of a scam." The court denied the motion, but ordered the redaction of all references to defense counsel. On the sixth day of trial, the government played portions of the tapes and distributed transcripts. The redaction was less than perfect, however, and the jury heard Palmer state that "my lawyer has to get a hold" of a particular witness, and heard Palmer tell Barton that "my lawyer's got an investigator that's going to get a hold of you." Nicolayson renewed his motion to be relieved, and the court again denied the motion.
 
 
 7
 On the seventh day of trial, the government moved to withdraw from evidence three of the six tapes. Nicolayson opposed this motion. He argued that two conversations contained therein demonstrated a knowledge of innocence, which was relevant to rebut the government's claim that the attempt to suborn perjury demonstrated a knowledge of guilt. First, in a conversation between Palmer and his father, the two agreed that Palmer was innocent and that Carrington was lying. Second, in a conversation between Palmer and a man named Mario, the two agreed that Palmer was innocent and that Carrington was lying, and Palmer explained that if he had been guilty he would have attempted to evade the police instead of surrendering. The court granted the government's motion to withdraw the three tapes, ruling that the conversations were hearsay.
 
 
 8
 The government then called Barton to the stand. During his testimony, Barton explained that he struck with a particular version of his planned perjury because "I had already talked to [Palmer's] lawyer, and I had to go along with [it]." Barton also explained that he learned his planned perjury well "so I could tell [Palmer's] lawyer." Nicolayson again moved to be relieved, and the court again denied the motion.
 
 
 9
 During closing argument, Nicolayson argued that Palmer attempted to suborn the perjury of Barton not because Palmer knew he was guilty, but because Palmer was afraid of the perjury of Carrington. Nicolayson argued that while Palmer's attempt to suborn perjury was an "outrage" and a "wrong" and demonstrated a "lack of integrity," Carrington's actual perjury was at least as improper.
 
 
 10
 The jury found Palmer guilty, and the court sentenced Palmer to 210 months imprisonment. Palmer appeals with the assistance of different counsel. Palmer argues that the trial court erred by denying Nicolayson's motions to be relieved, and by excluding as hearsay the exculpatory tape recordings.
 
 II. DENIAL OF THE MOTIONS TO BE RELIEVED
 
 11
 We review denial of a motion to be relieved for an abuse of discretion. United States v. Fagan, 996 F.2d 1009, 1014 (9th Cir.1993). We hold that the trial court did not abuse its discretion by denying Nicolayson's motions to be relieved.[1]
 
 
 12
 "[R]efusal to allow substitution of attorneys may result in denial of the constitutional right to effective assistance of counsel if the defendant and his attorney are embroiled in an 'irreconcilable conflict.' " United States v. McClendon, 782 F.2d 785, 789 (9th Cir.1986) (quoting Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir.1970)). Review of the denial of a motion to be relieved on the basis of attorney-client conflict turns on three factors: "(1) the timeliness of the motion to dismiss counsel; (2) the adequacy of the court's inquiry into defendant's complaint; and (3) whether the conflict between defendant and his counsel was so great that it resulted in a total lack of communication preventing an adequate defense." Id. (citing United States v. Mills, 597 F.2d 693, 700 (9th Cir.1979)).
 
 
 13
 Nicolayson's motion to be relieved was timely: he made it immediately after listening to the tape-recorded conversations. The district court's inquiry into Nicolayson's motions was extensive: it heard argument on four separate occasions.
 
 
 14
 As to the third and most important factor, there is no evidence of a conflict between Nicolayson and Palmer that was so great it caused "a total lack of communication preventing an adequate defense." Id. at 789. Indeed, Nicolayson appears to have provided Palmer with a competent and vigorous defense. While the jury heard some evidence that Palmer almost duped Nicolayson into presenting Barton's perjury,[2] there is no evidence that this created an attorney-client conflict. Once Nicolayson scuttled Palmer's attempt to suborn perjury, Palmer and Nicolayson were apparently in perfect agreement that Nicolayson had to do his best to neutralize Palmer's misconduct. Nicolayson did so, arguing that Palmer suborned perjury out of fear of Carrington's perjury, and not because of knowledge of guilt. While Nicolayson may have had a difficult time rehabilitating his own credibility in the eyes of the jury, this is not evidence of a conflict. Nicolayson did refer to Palmer's attempt to suborn perjury as an "outrage" and a "wrong" and stated that it demonstrated a "lack of integrity," but he argued that Carrington's actual perjury was at least as improper. It is doubtful that any lawyer could have done more for Palmer under these circumstances.
 
 
 15
 At oral argument, defense counsel made much of the government's notice to Nicolayson that Barton claimed that Nicolayson wanted Barton to testify even after Barton retracted his perjury. However, Nicolayson told the district court that he cut Barton loose as soon as he discovered the perjury, and Barton's word is dubious reason to question Nicolayson's honesty. The jury in fact heard no evidence or argument whatsoever that Nicolayson's behavior was improper. While Nicolayson did not cross-examine Barton, Nicolayson may have been seeking to avoid further emphasis on Palmer's misbehavior; any inference that Nicolayson feared Barton's accusations is highly speculative at best.
 
 III. EXCLUSION OF THE TAPE RECORDINGS
 
 16
 Palmer argues that the district court erred by excluding from evidence the tape recordings of two conversations in which Palmer stated that he was innocent and that Carrington was lying. Palmer offered these conversations as evidence that Palmer suborned perjury in response to Carrington's perjury, and not because Palmer knew he was guilty. We affirm the district court's decision to exclude these conversations.
 
 
 17
 The trial court determined that the tape recorded conversations were hearsay. Hearsay is an out-of-court declaration offered to prove the truth of the matter asserted. Fed.R.Evid. 803(c). Here, the offered declarations asserted that Palmer was innocent and that Carrington was lying--the ultimate matters to be resolved by the jury. The declarations were thus hearsay.
 
 
 18
 Palmer argues that the declarations were offered not to prove that Palmer was actually innocent and that Carrington was actually lying, but to prove only that Palmer believed these facts. In the context of the instant case, this is a distinction without a difference. The jury knew that Palmer suborned perjury. The government argued that the dishonesty demonstrated a guilty mind, which in turn demonstrated actual guilt. The defense argued that the dishonesty demonstrated fear of Carrington's perjury, which cannot demonstrate actual guilt. The jury had to decide which explanation made more sense. The proffered declarations went to the heart of the issue, whether offered to prove what was actually happening or what Palmer believed was happening.
 
 
 19
 The trial court next determined that these hearsay statements did not fall within the "then existing state of mind" exception. We review this determination for an abuse of discretion. United States v. Miller, 874 F.2d 1255, 1263 (9th Cir.1989). Under the hearsay exception of Federal Rule of Evidence 803(3), courts admit "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed...."
 
 
 20
 The tape recorded conversations offered by Palmer cannot satisfy the "foundational inquiry" of Rule 803(3), i.e., the "contemporaneousness, chance for reflection, and relevance" of the offered declaration. United States v. Ponticelli, 622 F.2d 985, 991 (9th Cir.), cert. denied, 449 U.S. 1016 (1980), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984). Palmer had ample time for reflection. The robbery occurred in March 1992, he was arrested in November 1993, and he made the statements in December 1993 and January 1994. At any time in the course of nearly two years, he could have decided for any number of reasons to lie to his father and to Mario. These declarations simply lack the "spontaneity and resulting probable sincerity," 2 McCormick on Evidence § 274, at 229 (4th ed. 1992) (citing 6 Wigmore on Evidence § 1714 (Chadbourn rev. 1976)), upon which Rule 803(3) rests.
 
 
 21
 Moreover, the proffered conversations are barred by the limiting language of Rule 803(3), which excludes "a statement of memory or belief to prove the fact remembered or believed...." As explained above, Palmer essentially offered his statements of belief in his own innocence and in Carrington's dishonesty to prove the same.
 
 
 22
 Finally, if the district court had admitted these declarations, it would in effect have allowed Palmer to testify to his innocence without subjecting himself to cross-examination. See Taylor v. Illinois, 484 U.S. 400, 412 (1988) ("[E]ven the defendant may not testify without being subjected to cross-examination.").
 
 IV. CONCLUSION
 
 23
 We hold that the district court properly denied Nicolayson's motions to be relieved and properly excluded the tape-recorded telephone conversations. Accordingly, the judgment of conviction is
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We may review on direct appeal a claim of ineffective assistance of counsel where the record is sufficiently complete to allow us to decide the issue. United States v. Swanson, 943 F.2d 1070, 1072 (9th Cir.1991). Here, the issue is whether various statements in open court created or demonstrated an attorney-client conflict. The transcript of trial is sufficient for us to decide the issue
 
 
 [2]
 As discussed above, the jury heard 1) a tape of Palmer saying "my lawyer has to get a hold" of a particular witness, 2) a tape of Palmer saying to Barton that "my lawyer's got an investigator that's going to get a hold of you," 3) Barton's testimony that he didn't modify his perjury because "I had already talked to [Palmer's] lawyer," and 4) Barton's testimony that he memorized the perjury "so I could tell [Palmer's] lawyer."